# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                               No. CR 09-1034 JB

LEROY PEREA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion in Limine Regarding Theresa Perea's Impeachment Evidence, filed April 6, 2010 (Doc. 51).  The Court held a hearing on April 7 and April 9, 2010.  The primary issue is whether the Court should allow the United States to inquire, on cross-examination of Theresa Perea, Defendant Leroy Perea's wife, into statements that T. Perea made to law-enforcement officers in 1996, when the officers responded to a domestic dispute.  Because T. Perea will offer important testimony about material events in the trial, because L. Perea may not testify about those events, and because T. Perea's credibility will be a key consideration, the Court will most likely allow the United States a limited inquiry into T. Perea's state of mind regarding her husband.  The Court, with the assistance of the parties, has crafted the one question the United States may ask, and therefore will grant the United States' motion in limine in part.

## FACTUAL BACKGROUND

The charges arise from an incident on June 20, 2007, involving Immigrations and Customs Enforcement Special Agent Sonny Garcia and L. Perea, whose vehicles were stopped alongside each

other at the stoplight at Eagle Ranch Road and Paradise Boulevard in Albuquerque, New Mexico. While stopped, L. Perea unrolled his window, shouted at Garcia, accusing him of cutting L. Perea off on the road, and then placed a firearm in his lap. Garcia identified himself as a federal agent, showed his badge, and drew his weapon. L. Perea responded that he did not care who Garcia was, drove away, and Garcia followed him to a nearby residence.

> 1.      **1996 Domestic-Violence Arrest.**

On May 28, 1996, law-enforcement officers responded to a domestic dispute at L. Perea's residence involving T. Perea, an intoxicated L. Perea, and their son. See Rio Rancho Department of Public Safety Report at 6, filed April 6, 2010 (Doc. 51-1). L. Perea allegedly pushed and hurt T. Perea. See Rio Rancho Department of Public Safety Report at 6; Defendant's Response to the Government's Motion in Limine Regarding Impeachment of Theresa Perea at 2-3, filed April 8, 2010 (Doc. 54). The responding officers arrested L. Perea and then attempted to speak with T. Perea. One of the officer's reports indicate that he asked T. Perea what happened and that T. Perea responded that if she spoke with the officer, L. Perea would kill her. See Rio Rancho Department of Public Safety Report at 7. L. Perea represents that, although T. Perea initially stated she did not want to talk to law-enforcement officers, she spoke with them later that same evening. See Response at 2.

> 2.      **Facts Underlying the Federal Case.**

T. Perea was in the vehicle with L. Perea at the time of the incident with Garcia. The United States represents that on the night of June 20, 2007, after L. Perea had driven to a nearby friend's house, Garcia followed him there, and other law-enforcement officers responded to the scene. T. Perea then gave a written statement to the responding law-enforcement officers. According to the United States, T. Perea stated that her husband did not have a gun in the vehicle -- information

which was false.  See Motion at 2-3.

## PROCEDURAL BACKGROUND

L. Perea is charged with a violation of 18 U.S.C. § 111, which makes it a crime to forcibly assault or intimidate a federal officer while the officer is engaged in the performance of his official duties.  The United States anticipates that L. Perea will call T. Perea to testify at trial about what she observed during the incident.  The United States wishes to explore whether T. Perea is afraid of her husband.  It seeks a preliminary ruling from the Court that, if T. Perea states that she is not afraid of her husband, the United States may ask her if in 1996, she refused to speak to law-enforcement officers and indicated that she did so because, if she said anything, L. Perea would kill her. See Motion at 1-2.  The United States indicates that it also has a good-faith basis for asking T. Perea if she fears her husband based on the domestic-violence arrest in 1996.  The United States argues that whether T. Perea is afraid of L. Perea is relevant to this case because it is indicative of L. Perea's power and persuasion over her, and thus is relevant to her credibility when testifying on L. Perea's behalf.  See Motion at 3.

L. Perea objects to the United States' request to impeach T. Perea with a fourteen-year old domestic violence incident.  See Defendant's Response to the Government's Motion in Limine Regarding Impeachment of Theresa Perea, filed April 8, 2010 (Doc. 54).  L. Perea represents that T. Perea may testify to what she observed on the night of the encounter between L. Perea and Garcia.  L. Perea believes that the United States is seeking to elicit that T. Perea is afraid of her husband to cause the jury to infer that he has forced her to testify at trial and that, in that testimony, she will be lying for L. Perea.  See Response at 2.  L. Perea contends that the evidence which the United States seeks to admit is not relevant to T. Perea's truthfulness, because it does not make her potential to lie more probable or less probable.  See Response at 4 (citing Fed. R. Evid. 401).

-3-

L. Perea represents that, although T. Perea initially stated she did not want to talk to the law-enforcement officers, she spoke with them later that same evening. See Response at 2. L. Perea argues that there is no congruence of facts or circumstances to show that T. Perea's fear of an intoxicated L. Perea fourteen years ago raises an inference that, fourteen years later, a non-intoxicated L. Perea who has not threatened her will cause her to lie under oath. See Response at 2-3. L. Perea contends that the United States does not argue that T. Perea was untruthful fourteen years ago when she expressed fear of her husband, nor can the United States show that fear of her husband causes her to lie. See Response at 3. L. Perea thus argues that the proposed impeachment testimony is not relevant. See Response at 4.

L. Perea further argues that the danger of unfair prejudice that the proposed questioning will cause far outweighs its probative value. See Response at 4 (citing Fed. R. Evid. 403). L. Perea contends that the United States' proposed limitation of questioning on the 1996 domestic-violence incident would not remove from the jury's mind that L. Perea was alleged to have committed a past assault, and that the United States is attempting to admit improper evidence of L. Perea's prior assault of his wife under the guise of impeachment. See Response at 4-5. L. Perea contends that the United States may ask T. Perea if she currently fears her husband, but that if she answers "no," the United States must move on and not ask about the past alleged assault of T. Perea. Response at 5. L. Perea also argues that the United States should be prohibited from setting up a false impeachment by asking T. Perea if she has ever been in fear of her husband to impeach her with her past claim of fear stemming from the 1996 incident. See Response at 5. L. Perea does not object to the United States questioning T. Perea about her natural bias, as the spouse of L. Perea, nor does L. Perea object to the United States questioning T. Perea about her inconsistent statements regarding L. Perea's firearm when law-enforcement officers questioned her the night of the June 20, 2007

incident.  See Response at 5-6.

At the hearing on April 7, 2010, Assistant United States Attorney Shana Pennington explained that T. Perea was in the vehicle with L. Perea at the time of the encounter between L. Perea and Garcia, and the United States anticipates that she will testify about her observations of the encounter.  See Transcript of Hearing at 182:15-21 (taken April 7, 2009)("Apr. 7 Tr.") (Pennington).[1]  Ms. Pennington argued that asking T. Perea about her fear of her husband is important to attacking her credibility at trial.  See id. at 184:4-24 (Pennington).  Ms. Pennington indicated that the United States would ask a single question: "Isn't it true that, in another unrelated incident with law enforcement, you expressed refusal or concern of talking to them because you were afraid your husband would kill you?"  Id. at 184:19-24 (Pennington).  Ms. Pennington argued that T. Perea's credibility and bias is at issue, because, on the night of the incident in question, T. Perea provided a written statement to law-enforcement officers which states that her husband did not have a gun, and that she was not aware that her husband owned a gun.  See Apr. 7 Tr. at 185:11-15 (Pennington).  Ms. Pennington explained that the evidence will show that L. Perea had hidden the gun behind a bush, that the law-enforcement officers later located the gun, and that L. Perea conceded that the gun belonged to him.  See id. at 185:18-23 (Pennington).  Ms. Pennington argues that T. Perea's untruthful statement indicates that she may be vulnerable to her husband's influence, and therefore the United States' limited inquiry about her statement to law-enforcement officers in 1996 is probative in this case.  See id. at 185:24-186:3 (Pennington).

Richard Winterbottom, L. Perea's attorney, argued that, although T. Perea initially refused to give a statement to the officers in 1996, she spoke to one of the officers during the same incident.

_____

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

See Apr. 7 Tr. at 186:12-18 (Winterbottom).  Mr. Winterbottom stated that he anticipates T. Perea's testimony to be that she is not afraid of L. Perea now and that it is what she feels now, not fourteen years ago, that is the relevant inquiry.  See id. at 186:24-187:3 (Winterbottom).  Mr. Winterbottom also argued that the danger of unfair prejudice outweighs the probative value of inquiring into the 1996 domestic-violence incident.  See id. at 188:2-3 (Winterbottom).  He contends that the 1996 assault of T. Perea confuses the issue of the alleged assault of Garcia in 2007.  See id. at 188:9-14 (Winterbottom).

On April 8, 2010, the Court requested that the United States propose precisely the question it intends to ask T. Perea regarding her statements to law-enforcement officers during the 1996 incident.  Ms. Pennington presented the Court and the parties with the United States' proposed question:

Q: Are you afraid of your husband?

A: No

Q: Isn't it true that when officers attempted to interview you about an unrelated prior incident in 1996 involving your husband, that you remarked to officers that you were scared that, if you talked to the officers, your husband would kill you?

Exhibit B to the Courtroom Deputy's Clerk's Minutes, filed April 7, 2010 (Doc. 77). Ms. Pennington's proposed question form also indicated that, if T. Perea answered "yes" to the first question, that answer would be the end of the inquiry.

The Court heard further argument on April 9, 2010.  The Court inquired why the United States is concerned about T. Perea's credibility and Ms. Pennington argued that T. Perea, in her statement to law-enforcement officers on June 20, 2007, omitted any reference to L. Perea showing a gun or having a gun, and that the United States does not yet know whether T. Perea will admit to the omission during her trial testimony.  See Transcript of Hearing at 8:17-25 (taken April 9, 2010)

-6-

(Court, Pennington)("Apr. 9 Tr."). Ms. Pennington also expressed concern that T. Perea's account of what happened at the intersection between her husband and Garcia will not be accurate, because T. Perea has already demonstrated that she is willing to omit information about the night in question, and that testimony about what occurred that evening goes to whether a self-defense instruction is appropriate for the jury. See Tr. at 9:18-20 (Pennington). Ms. Pennington argued that the United States is concerned that T. Perea may testify that Garcia made verbal threats or other statements while the vehicles were at the intersection. See Apr. 9 Tr. at 10:9-13 (Pennington). Mr. Winterbottom explained that he anticipates T. Perea will testify that Garcia's vehicle cut off her husband's vehicle on Paseo del Norte, that there was an angry discussion at the intersection, and that T. Perea did not see a gun because her attention was not on the center-console of the vehicle or on L. Perea's lap. See Tr. at 10:22-11:6 (Winterbottom).

## LAW REGARDING RELEVANT EVIDENCE

The threshold issue in determining the admissibility of evidence is relevance. As a baseline, under the Federal Rules of Evidence, all evidence that is relevant is admissible -- unless another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible. See Fed. R. Evid. 402. The standard for relevance is liberal. See United States v. Leonard, 439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard.")(citing United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998)). The evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. See United States v. Leonard, 439 F.3d at 651. "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only need to have "any tendency" to do so. United States v. Jordan, 485 F.3d 1214, 1218

(10th Cir. 2007).  See United States v. Leonard, 439 F.3d at 651; United States v. McVeigh, 153 F.3d at 1190.

On the other hand, although the threshold burden is low, the rules do "not sanction the carte blanche admission of whatever evidence a [party] would like.  The trial judge is the gatekeeper under the Rules of Evidence."  United States v. Jordan, 485 F.3d at 1218.  As the advisory committee noted, "certain circumstances call for the exclusion of evidence which is of unquestioned relevance." Fed. R. Evid. 403 advisory committee's note.  Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative." Fed. R. Evid. 403.  A district court has discretion to examine whether the probative value of impeachment testimony will be substantially outweighed by the risk of unfair prejudice.  See United States v. Cerno, 529 F.3d 926, 935 (10th Cir. 2008)("Because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues, our review affords the district court considerable discretion in performing the Rule 403 balancing test.")(internal citation and quotation omitted); United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994)(stating that the district court has "broad discretion to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice.").

## ANALYSIS

The United States seeks a pretrial ruling allowing it to explore T. Perea's refusal to speak to law-enforcement officers in 1996 during a domestic-violence incident, because she was afraid her husband would kill her if she spoke to the officers.  The United States has submitted the proposed question it wishes to ask, should T. Perea testify that she is not afraid of her husband, L. Perea.

L. Perea argues that the Court should not permit the proposed question because it is not relevant to showing whether T. Perea is currently afraid of her husband, nor is it relevant to whether fear of her husband will cause her to lie on the stand at trial.  L. Perea also argues that the danger of unfair prejudice the question, which references a fourteen-year-old domestic-violence incident, creates outweighs any probative value the answer may have.

The Court believes that T. Perea's fear of her husband, coupled with her untruthful statements to law-enforcement officers the night of the June 20, 2007 incident, are probative of T. Perea's truthfulness and bias.  The evidence so far shows L. Perea was acting uncivilly and angrily on the night of June 20, 2007, and the Court believes that a reasonable jury could conclude that he could scare his wife, perhaps to the point of making her slant her testimony to help L. Perea. The Court also believes that such evidence is sufficient to provide the jury with a basis for an inference that T. Perea's truthfulness on the stand may be in question, because of her past statement indicating fear of her husband.  See United States v. Jordan, 485 F.3d at 1218.  The Court, however, is concerned about the risk of unfair prejudice to L. Perea that arises from discussing a fourteen-year-old domestic-violence incident and alleged assault of T. Perea.

While the Court will not, pre-trial, make a definitive ruling on admissibility, the Court is inclined to allow the question.  It appears, from the representations which the parties have made and the way the evidence has developed at trial, that T. Perea will make some statements with which the United States will take strong exception and which may be important to the case. The United States has expressed concern about the effect T. Perea's testimony may have on the issue of self-defense, and it is concerned that T. Perea's account of what occurred between Garcia and L. Perea at the intersection may not be accurate.  That Mr. Winterbottom represents T. Perea will say she did not see a gun in her husband's lap -- which is his version of the facts -- is troubling.  It thus appears her

credibility will be at issue.  On the other hand, the Court does not want her credibility to be a phantom issue and let in a very prejudicial statement based upon it, and to assure that her credibility is a real issue, will reserve a final ruling until it has heard her testify some about the events of June 20, 2007.  To help L. Perea plan, and to make certain he knows the consequence of calling T. Perea, the Court has indicated it likely will allow the United States to ask its question.

To limit as much as possible the prejudice any questioning about the incident may pose, the Court has, with Mr. Winterbottom's help, rewritten the United States' question to eliminate some of that prejudice.  The second question will read: "Isn't it true that when officers attempted to interview you about an unrelated incident in 1996, that you remarked to officers that you were scared that, if you talked to the officers, your husband would kill you?"  The Court will also limit the United States to this one question about T. Perea's statement to law-enforcement officers in 1996, that she was not willing to speak to law-enforcement because she feared her husband would kill her.  The Court will, therefore, most likely permit the proposed question the United States submitted.  The Court cautions, however, that if T. Perea denies having made such statement in 1996, the United States shall not inquire further, nor present any collateral evidence that T. Perea made such statement.                    .

**IT IS ORDERED** that the United States' Motion in Limine Regarding Theresa Perea's Impeachment Evidence is granted in part as set forth in this opinion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Jack E. Burkhead
Shana B. Pennington
  Assistant United States Attorneys
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Richard A. Winterbottom
  Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorney for the Defendant*