# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.              No. CR 09-1034 JB

LEROY PEREA,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Government's Jury Instructions and His Response to the Government's Objection to the Court's Preliminary Instruction, filed April 6, 2010 (Doc. 50).  The Court held hearings during the jury trial on April 8 and April 9, 2010.  The primary issues are: (i) whether instructing the jury on the first element of 18 U.S.C. § 111(b) will violate Defendant Leroy Perea's due-process rights if the Court includes the language "forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Sonny Garcia"; (ii) whether § 111(b) requires underlying physical assaultive conduct; and (iii) whether the Court should instruct the jury on the meaning of "engaged in the performance of his official duties" in § 111(b).  Because the United States Court of Appeals for the Tenth Circuit has held that the language of § 111 does not violate a defendant' due-process rights, the Court will overrule Perea's objection on the basis of due process.  Because the Tenth Circuit has not indicated that § 111(b) requires underlying assaultive conduct, and because the current circuit split on the issue pertains to § 111(a), and not § 111(b), the Court will overrule Perea's objection on that ground.  Because the Court finds that the jury should receive some guidance on the scope of Immigrations

and Customs Enforcement ("ICE") Special Agent Sonny Garcia's official duties, but not in the manner which the United States proposes, the Court will sustain in part and overrule in part Perea's objection on that ground.

## FACTUAL BACKGROUND

The charges arise from an incident on June 20, 2007, involving Immigrations and Customs Enforcement Special Agent Sonny Garcia and Perea, whose vehicles were stopped alongside each other at the stoplight at Eagle Ranch Road and Paradise Boulevard in Albuquerque, New Mexico. See Defendant's Objections at 1-2. Perea represents that he anticipates that Garcia will testify at trial that, while stopped, Perea unrolled his window, shouted at Garcia, accusing him of cutting Perea off on the road, and then placed a firearm in his lap, where, according to a witness, it remained until the light changed. See id. at 2. According to Perea, Garcia will also testify that, moments before the light changed, he flashed his badge and said he was a federal officer, and that Perea responded by shouting that he did not care and drove away. See id. Garcia followed Perea to a nearby residence. See id. The United States represents that the evidence will show that, in addition to showing his badge and identifying himself as a federal agent, Garcia drew his weapon. See United States' Objections to the Court's First Proposed Preliminary Instructions at 2, filed April 5, 2010 (Doc. 48). The United States represents that the evidence will also show that, in addition to Perea responding that he did not care who Garcia was, he also threatened to kill him. See id. The United States further represents that, when Perea drove away, Garcia had his weapon trained on Perea's vehicle. See id.

## PROCEDURAL BACKGROUND

The Court filed its first proposed preliminary jury instructions on April 5, 2010. See Doc. 47. In the Court's proposed preliminary instructions, the Court narrowed the list of six

enumerated acts against an officer engaged in the performance of his official duties listed in 18 U.S.C. § 111(a)(1) to two of the six: forcibly assaulted or intimidated.  The United States objected to the Court's preliminary instruction, arguing that it anticipated that the evidence would support a reasonable jury concluding unanimously that Perea committed each of the six proscribed acts in 18 U.S.C. § 111(a)(1) -- forcibly assaults, resists, opposes, impedes, intimidates, or interferes. Perea responded:

> It is Mr. Perea's position that the court's proposed preliminary instruction that states the offense as "forcibly assault and intimidate" is correct.  It is his position that this should remain the preliminary instruction.  The issue of the final instructions can be re-visited after all the evidence developed during the course of trial.  Mr. Perea's position remains, however, that all manners of violating the statute, except assault, have no part in any instruction given to the jury.

Defendant's Objections to the Government's Jury Instructions and His Response to the Government's Objection to the Court's Preliminary Instruction at 10-11.  The Court overruled the United States' objection to the preliminary instruction and stated that it would reconsider the § 111 instruction for the final jury instructions after it had heard all of the United States' evidence at trial. See Memorandum Opinion and Order, filed April 8, 2010 (Doc. 58).

### 1.  <u>Objection to How § 111 Can Be Violated.</u>

In the United States' Proposed Jury Instruction No. 9, it states:

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

> *First:* the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Immigration and Customs Enforcement Special Agent Sonny Garcia;
>
> *Second:* the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was a federal officer who was then engaged in the performance of his official duty, as charged; and
>
> *Third*: the defendant did such acts intentionally.

*Fourth:* in doing such acts, the defendant used a deadly or dangerous weapon.

Government's Requested Jury Instructions at 14, filed March 31, 2010 (Doc. 43). In combination with his response to the United States' objection to the preliminary instruction, Perea objected to the United States' proposed jury instruction including all six enumerated acts. <u>See</u> Defendant's Objections to the Government's Jury Instructions and His Response to the Government's Objection to the Court's Preliminary Instruction. He argues that "resisted, opposed, impeded, intimidated, or interfered with" should not be included in the elements instruction, and that only "assaulted" should be included. Defendant's Objections at 3. Perea argues that "resisted, opposed, impeded, intimidated, or interfered with" presupposes that there is some kind of law-enforcement activity that can be resisted, opposed, impeded, intimidated, or interfered with, and that in this case, there was no apparent law-enforcement activity occurring with which Perea could have resisted, opposed, impeded, intimidated, or interfered. Defendant's Objections at 3. Perea argues that he was without notice that any activity on his part short of assault could be a felony offense, and thus holding Perea to answer for a felony charge for resisting, opposing, impeding, intimidating, or interfering "with someone who looked and acted like just another person on the street," would violate the Fifth Amendment's due process clause. Defendant's Objections at 5. He further argues that, without notice, there could be no criminal intent. <u>See</u> Defendant's Objections at 6 n.2. He stresses that, regardless of the identity or activity of the alleged victim, any person of ordinary intelligence would be on notice that assault is a crime, and thus Perea does not object to including "assault" in the elements definition of § 111(a). Defendant's Objections at 6-7. He further argues that assault is the offense which Congress intended to proscribe, and not "the mere incivility of resistance, opposition, impediment, intimidation, or interference." Defendant's Objections at 8. Because Perea contends the charge against him is assault, he argues that the other acts are irrelevant, superfluous, and

confusing, and that the Court should eliminate them. <u>See</u> Defendant's Objections at 8. In support of his argument, Perea looks to the lesser "simple assault" offense, and argues that the lesser offense proscribing simple assault might be the non-assaultive resisting, opposing, impeding, intimidating, or interfering with a law-enforcement officer, and thus argues that, if the Court uses those acts in its final instruction, it should do so in conjunction with a lesser-included instruction of a misdemeanor offense. <u>See</u> Defendant's Objections at 8.

In addition to his argument that including the other enumerated acts violates due process, Perea also argues that the challenged manners of violating § 111 are not supported under the facts of the case. <u>See</u> Defendant's Objection at 10. Perea argues that the United States' position in its objection to the preliminary instruction that he violated other acts within § 111 when he drove away from Garcia is "a forced and novel application of the law to facts that will be contested -- facts that have not heretofore appeared in any statement made by SA Garcia, nor in any response by the government to Mr. Perea's request for a bill of particulars." Defendant's Objections at 10. Perea argues that this version of the facts supports an as-applied due-process challenge. <u>See</u> Defendant's Objections at 11.

The United States, in response, argues that the discovery the United States provided Perea gave all the relevant details regarding Garcia's actions at the intersection, the threats Perea lodged at Garcia, and that Perea drove off, and thus he was aware of all the facts the United States would be using and was not unfairly surprised. <u>See</u> United States' Response to Defendant's Objections [to] the Government's Jury Instructions and Reply in Support of the Government's Objection to the Court's Preliminary Instruction, filed April 6, 2010 (Doc. 52). The United States contends that Perea's wrongful conduct occurred both at the intersection and when he drove off. <u>See</u> United States' Response at 3. The United States also refutes Perea's argument that there can be no criminal

intent without notice, arguing that the Supreme Court has held that the defendant does not need to know the federal agent's identity to commit the proscribed acts in § 111.  See United States' Response at 2 (citing United States v. Feola, 420 U.S. 671, 686 (1975)).  The United States contends that the Court should thus reject Perea's argument that, as a matter of law, he cannot be charged with anything other than assault because he did not know Garcia's identity before he approached the intersection.  See United States' Objection at 4.

The United States also interprets Perea's argument as asserting that § 111 is fundamentally an assault statute: "When distilled, it appears as though the primary thrust of the defendant's argument is that, for each of the acts enumerated in § 111, the United States must still prove assaultive conduct."  United States' Response at 4.  The United States argues that the United States Court of Appeals for the Fifth Circuit recently addressed and rejected this argument, and that the Court should look to the Fifth Circuit's recent opinion in United States v. Williams, No. 09-50059, 2010 U.S. App. LEXIS 5997 (5th Cir. March 23, 2010), which held that a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct.  See 2010 U.S. App. LEXIS 5997, at *13.  The United States points out that there is currently a split among the United States Courts of Appeals whether § 111 requires the United States to prove assaultive conduct as it relates to each of the six acts.  The United States Court of Appeals for the Ninth Circuit has stated that "it is unclear whether the statute prohibits acts of resistance, opposition, impediment, intimidation, or interference that do not also involve an underlying assault," and held in United States v. Chapman, 528 F.3d 1215 (9th Cir. 2008), that convictions under § 111 require at least some form of assault. See 528 F.3d at 1222.  The United States notes that the United States Court of Appeals for the Tenth Circuit has not yet addressed the question, but argues that the Court should adopt the Fifth Circuit's holding that assaultive conduct is not necessary.

-6-

During his argument for a rule 29 judgment for acquittal, Richard Winterbottom, Perea's attorney, incorporated his arguments on whether "resisted, opposed, impeded, intimidated, or interfered with" should be considered part of the instructions to the jury.  Mr. Winterbottom argued that the Court should follow the Ninth Circuit's holding in  United States v. Chapman and require that, for Perea to be convicted under § 111, his conduct must amount to an assault.  See Transcript of Hearing at 274:7-17 (taken April 8, 2010)(Winterbottom)("Apr. 8 Tr.").[1]  Assistant United States Attorney Shana Pennington responded that the Court should not follow the Ninth Circuit's holding, but does not need to find that United States v. Chapman was wrongly decided, because that case addressed § 111(a) and the United States is attempting to show that Perea violated § 111(b). See Apr. 8 Tr. at 290:15-19 (Pennington).  Moreover, Ms. Pennington argued that the Fifth Circuit correctly interpreted § 111 in United States v. Williams, because it reasoned that to follow the holding in United States v. Chapman would render the other five acts, besides assault, in § 111 meaningless if they all also required assaultive conduct.   See Apr. 8 Tr. at 290:25-291:6 (Pennington).

The parties continued their arguments on the jury-instruction objections on April 9, 2010. Mr. Winterbottom argued that forcibly intimidating someone with a deadly weapon is an assault and that committing any of the other acts with a deadly weapon is the same thing as an assault, and thus the five uncivil acts merge with assault.   See Apr. 9 Tr. at 17:24-18:13 (Winterbottom).  Because they merge into assault, Mr. Winterbottom argued "assault" is all that should go to the jury. Apr. 9 Tr. at 18:10-13 (Winterbottom).  Ms. Pennington argued that the United States' evidence supports including "resisted, opposed, impeded, or interfered with" in the instruction, in addition

---

[1] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

to "forcibly assaulted or intimidated."  Transcript of Hearing at 6:18-25 (taken April 9, 2010) (Pennington)("Apr. 9 Tr.").  Ms. Pennington argued that Garcia identified himself as a federal officer, and had his firearm drawn and trained it on Perea, and that Perea told Garcia he did not care who he was and drove off -- actions which Ms. Pennington contended constituted resisting, opposing, impeding, and interfering with Garcia while he was engaged in his official duties. See Apr. 9 Tr. at 7:2-18 (Pennington).

Mr. Winterbottom also raised an objection at the hearing that, if intimidation is included, it should be "forcibly intimidated" and that the instructions should define "forcible intimidation." Apr. 9 Tr. at 62:18-64:14 (Winterbottom).  Ms. Pennington argued that the Tenth Circuit pattern jury instructions define "forcible assault" but do not define any of the other acts, and it is her belief that this difference is because the other acts are commonly understood terms.  See Apr. 9 Tr. at 64:15-65:21 (Pennington).

## 2.    Objection to the United States' Proposed Description of Performance of Official Duties.

The United States' Proposed Jury Instruction No. 9 also includes an instruction on when a federal officer is engaged in the performance of his official duties, stating:

> A federal officer is "engaged in the performance of his official duties" if he is acting within the scope of what he is employed to do, rather than engaging in a personal frolic of his own.  In determining whether a federal officer is engaged in the performance of his official duties, you may consider whether the federal officer was driving a government-issued vehicle at the time of the incident, whether the federal officer was driving to or from work, and whether the federal officer's position entitles him to availability pay based on the fact that officer is always on call.

Government's Requested Jury Instructions at 15.  Perea objects that this instruction as written operates as a conclusive presumption on a key and contested element of the offense, in violation of due process and the presumption of innocence.  See Defendant's Objections at 12.  Perea argues that

the law is not settled about what constitutes performance of official duties, and that the ultimate issue whether an officer was engaged in the performance of official duties is a fact question for the jury. <u>See</u> Defendant's Objections at 49-50 (citing <u>United States v. Martin</u>, 163 F.3 1212, 1214 (10th Cir. 1998)). He argues that the term "engaged in the performance of official duties" adequately directs the jury in the use of its common-sense judgment and requires no further definition. Defendant's Objections at 15.

The United States argues that its proposed jury instruction more completely and accurately describes what Garcia's position entails, and does nothing more than equip the jury with the proper guidance it needs to evaluate the fluid determination whether Garcia was engaged in the performance of his official duties at the time of the incident.

## LAW REGARDING 18 U.S.C. § 111

"In passing 18 U.S.C. § 111, Congress intended to accomplish dual purposes; 'to protect both federal officers and federal functions.'" <u>United States v. Jones</u>, 254 Fed. Appx. 711, 718 (10th Cir. 2007)(quoting <u>United States v. Feola</u>, 420 U.S. at 679). In 2007, 18 U.S.C. § 111 read:

### § 111. Assaulting, resisting, or impeding certain officers or employees

**(a) In general.** -- Whoever --

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years, or both.

-9-

> **(b) Enhanced penalty.** -- Whoever, in the commission of any acts described in subsection (a), uses deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111 (2007).  In United States v. Hathaway, 318 F.3d 1001 (10th Cir. 2003), the Tenth Circuit determined the elements of the offense or offenses that § 111 proscribes.  The Tenth Circuit held: "[I]n the context of § 111, the definition of 'simple assault' is assault which does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or any felony other than those referred to in § 113(a)(2)."  318 F.3d at 1008.  The Tenth Circuit further held that:

> "all other cases" assault under § 111(a) refers to any assault that is neither "simple assault" as we have defined that phrase above nor assault as defined in § 111(b). Thus, "all other cases" assault under § 111(a) includes any assault that involves actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) but does not involve a deadly or dangerous weapon or bodily injury.  In light of this definition, either actual physical contact or the intent to commit murder or any felony other than those referred to in § 113(a)(2) is a required and essential element of the felony offense of "all other cases" assault under § 111(a).  To sustain a felony conviction under § 111(a), Jones[ v. United States, 526 U.S. 227 (1999)] requires that, in addition to the other required elements, one of these two elements also "be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 232.

318 F.3d at 1008-09.  The Tenth Circuit found that, because the indictment did not quote the language of § 111 differentiating between simple assault and "all other cases," it failed to set forth all the elements of the offense of conviction, and thus did not put the defendant on fair notice that he needed to defend against the felony charge.  See 318 F.3d at 1010.  Congress recently amended § 111(a) as part of the Court Security Improvement Act of 2007, effective January 7, 2008.  See Pub. L. No. 110-177, § 208(b), 121 Stat. 2538 (2008).  The amendment substituted "where such acts involve physical contact with the victim of that assault or the intent to commit another felony" for

-10-

"in all other cases" in subsection (a), thus amending the statute to reflect the holding in United States v. Hathaway.[2]

1.      **"Forcibly" and the Circuit Split Whether § 111(a) Requires Assaultive Conduct.**

In United States v. Disney, 253 F.3d 1211 (10th Cir. 2001), the Tenth Circuit stated that it agreed with the United States Court of Appeals for the Second Circuit's holding in United States v. Bamberger, 452 F.2d 696 (2d Cir. 1971), and found that "forcibly," as used in § 111(a), "should not be construed as excess verbiage" and "ought to limit the proscribed acts to fewer than would fit the definition of the unmodified verbs alone."   United States v. Disney, 253 F.3d at 1214 (quoting

_____

[2] 18 U.S.C. § 111 now states:

**§ 111.  Assaulting, resisting, or impeding certain officers or employees**

**(a) In general.** -- Whoever --

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

**(b) Enhanced penalty.** -- Whoever, in the commission of any acts described in subsection (a), uses deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

United States v. Bamberger, 452 F.2d at 699).   The Tenth Circuit rejected the government's argument that § 111(a) criminalizes threats made outside the presence of the individual who is the object of the threat and concluded that, "if the 'force' element of 18 U.S.C. § 111(a) is to be established by proof of threats rather than by proof of actual touching, the threat must have been of immediate harm."   United States v. Disney, 253 F.3d at 1214 (citing United States v. Walker, 835 F.2d 983, 987 (2d Cir. 1987); United States v. Farrow, 198 F.3d 179,185-86 (6th Cir. 1999); United States v. Cunningham, 509 F.2d 961,963 (D.C. Cir. 1975); United States v. Johnson, 462 F.2d 423, 428 (3d Cir. 1972); Burke v. United States, 400 F.2d 866, 868 (5th Cir. 1968)).   Other circuits have held that the term "forcibly" modifies all of the acts rendered unlawful by § 111(a)(1). See United States v. Hazlewood, 526 F.3d 862, 865 (5th Cir. 2008); United States v. Arrington, 309 F.3d 40, 44 (D.C. Cir. 2002)("[A] defendant does not violate [§ 111(a)] unless he forcibly assaults or forcibly resists or forcibly opposes . . . ."); United States v. Schrader, 10 F.3d 1345, 1348 (8th Cir. 1993)("Force is a necessary element of any § 111 violation.").   In United States v. Carter, No. 97-1073, 1997 U.S. App. LEXIS 25253, the defendant challenged the district court's jury instruction on the first element of § 111, which the court instructed was that he "forcibly assaulted, resisted, impeded or interfered with" the named victim. 1997 U.S. App. LEXIS 25253, at *6.   The defendant argued that the instruction was "internally flawed in that it provided for the disjunctive aspects which could independently violate the statute without bodily injury occurring and the specific aspect of assault."  1997 U.S. App. LEXIS 25253, at *6.  The Tenth Circuit found that, "because the jury was not required to find bodily injury as an element of the offense, this argument is specious," and explained that "[n]othing contained in those instructions can be construed as a limitation of the element of force to only one of the means by which § 111 can be violated." 1997 U.S. App. LEXIS 25253, at *7.

-12-

The Tenth Circuit in United States v. Hathaway held that proof of actual physical contact, while sufficient, is not necessary to sustain a conviction of non-simple assault under § 111(a). See 318 F.3d at 1008-09. Recently, a split among the Courts of Appeals has occurred over the issue whether § 111(a) prohibits acts of resistance, opposition, impediment, intimidation, or interference that do not also involve an underlying assault. Under the Ninth Circuit's view of § 111(a), convictions require at least some form of assault. See 528 F.3d at 1222. In United States v. Chapman, the Ninth Circuit interpreted the Tenth Circuit's holding in United States v. Hathaway to "leave no room for a conviction that does not involve at least some form of assault." 528 F.3d at 1219. The Ninth Circuit interprets § 111 as requiring that, "while a defendant could be charged with resisting, opposing, impeding, intimidating, or interfering, he could not be convicted unless his conduct also amounted to an assault." 528 F.3d at 1219. In United States v. Chapman, officers from the Department of Homeland Security at a port of entry approached the defendant to investigate complaints that he had cut in line. The officers asked the defendant to move to the side of the walkway, he refused, and so the officers attempted to physically escort him to the side of the walkway. The defendant "tensed up" and remained rigid, and the officers responded by hitting him with a tactical baton. The defendant remained rigid and told the officers to "hit [him] again." The officers hit him again, without response, and then sprayed pepper-spray in his eyes to immobilize and arrest him. The defendant was arrested and charged in a criminal complaint alleging that he "did knowingly and intentionally forcibly resist, oppose, impede, and interfere with" a federal officer in violation of 18 U.S.C. § 111(a)(1). At a bench trial, the district court found the defendant guilty of the misdemeanor offense, and the defendant appealed. The Ninth Circuit found that the defendant's actions did not constitute an assault, because to constitute an assault, an action must be "either a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury

upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm."  528 F.3d at 1219-20.  The Ninth Circuit reasoned that, "while his actions might have constituted 'resistance,' 'opposition,' or an 'impediment,' to the officers' desire to move him, they did not constitute 'assault,' and so [the defendant] could not have been convicted under either the Second or Tenth Circuits' interpretation of § 111(a)."  528 F.3d at 1220.

In United States v. Gagnon, 553 F.3d 1021 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit addressed the same question, whether a conviction under § 111 is permissible where there is not an assault, but there is forcible resisting, impeding, or interfering with an officer.  See 553 F.3d at 1022.  In that case, federal border patrol agents confronted the defendant at a marina, because they were suspicious of his immigration status.  The defendant, who was intoxicated, went onto his boat to retrieve his immigration paperwork, and then one officer observed the defendant "suddenly jump up" and testified that he feared the defendant might attack the agents, so they attempted to force him to sit down, he resisted, and they handcuffed him.  The border patrol agents alleged that the defendant made himself vomit in their patrol vehicle by sticking his finger down his throat and alleged that the defendant spit at them while yelling.  The defendant was charged with violating 18 U.S.C. § 111(a)(1), the misdemeanor offense.  At a bench trial, a magistrate judge sentenced him to six months in prison, the district judge affirmed, and the defendant appealed.  The Sixth Circuit held that misdemeanor "simple assaults" under § 111 refer to cases where a defendant has forcibly performed one of the six prohibited actions of § 111(a), not only assault, without forcibly or intentionally creating physical conduct himself and without the intent to commit a serious felony, and thus affirmed the misdemeanor conviction under § 111.  553 F.3d at 1027.  The Sixth Circuit noted that "Congress's amendment does little to clarify the

-14-

primary question on this appeal: whether § 111 is limited only to assaults or includes all the actions spelled out in § 111(a)."  553 F.3d at 1025 n.4.  The Sixth Circuit criticized the Ninth Circuit's finding in <u>United States v. Chapman</u>, because "it makes a great deal of what § 111 does say entirely meaningless, which flies in the face of the Supreme Court's repeated instruction that 'courts should disfavor interpretations that render language superfluous.'"  <u>United States v. Gagnon</u>, 553 F.3d at 1026 (quoting <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253 (1992)).  The Sixth Circuit stated that, if Congress meant § 111 to cover only assault, it could have said only assault, or amended the statute in 2008 to limit its language only to assault.  The Sixth Circuit also pointed out that Congress named the statute "Assaulting, resisting, or impeding certain officers and employees."  553 F.3d at 1026.

The Fifth Circuit, in <u>United States v. Williams</u>, also rejected the Ninth Circuit's holding that § 111 requires an assault.  <u>See</u> 2010 U.S. App. LEXIS 5997, at *2.  In that case, military police officers responded to a complaint against the defendant for indecent exposure.  The military police attempted to arrest the defendant, who informed them that she suffered from fibromyalgia syndrome, causing her to suffer extreme pain when touched, and she resisted arrest, swinging her arms with a lit cigarette in her hand.  The grand jury indicted the defendant, charging her with violating § 111(a)(1), without reference to any physical contact between her and the officers, and a jury found her guilty.  <u>See</u> 2010 U.S. App. LEXIS 5997, at *3.  The defendant appealed, arguing insufficiency of the evidence.  The Fifth Circuit noted the split between the Ninth Circuit and the Sixth Circuit, and found that, "[e]ven before the recent change in the statute, the Sixth Circuit rule was the better one, as it avoided rendering superfluous the other five forms of conduct proscribed by § 111(a)(1)."  2010 U.S. App. LEXIS 5997, at *12.  The Fifth Circuit noted that "Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at

physical contact, but it declined the opportunity to delete the other forms of conduct proscribed by the statute or to otherwise clarify that § 111(a)(1) convictions require an underlying assault." 2010 U.S. App. LEXIS 5997, at *12.

### 2.    § 111 and Criminal Intent.

In United States v. Feola, the Supreme Court concluded that § 111 does not require, as an element of the crime, that the defendant to know that the victim of the assault was a federal officer. See 420 U.S. at 684.  The Supreme Court stated that the defendant's knowledge of the identity of the victim may, however, play a part "where an officer fails to identify himself or his purpose [and] his conduct . . . might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property." Id. at 686.  "In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent." Id.  In United States v. Montoya, 676 F.2d 428 (10th Cir. 1982), the Tenth Circuit observed: "A defendant who assaults a federal law officer, unaware of the latter's status and reasonably believing himself to be acting in a protective posture, may be entitled to a self defense instruction." Id. at 431. The Tenth Circuit has also found that § 111 gives a person of ordinary intelligence fair notice of what conduct is proscribed, and is not unconstitutionally vague, indefinite, or ambiguous. See United States v. Linn, 438 F.2d 456, 458 (10th Cir. 1971).

### 3.    § 111 and the Performance of Official Duties.

There is no bright-line test to define performance of official duties.  See United States v. Holder, 256 F.3d 959, 963 (10th Cir. 2001)(quoting United States v. Hoy, 137 F.3d 726, 729 (2d Cir. 1998); United States v. Hoffer, 869 F.2d 123, 125 (2d Cir. 1989)).  The Tenth Circuit liberally interprets the meaning of "while engaged or on account of the performance of official duties" in § 111, recognizing that "each case . . . requires a fact specific analysis, but no case will turn on any

one factor." <u>United States v. Ama</u>, 97 Fed. Appx. 900 (10th Cir. 2004)(quoting <u>United States v.</u> <u>Holder</u>, 256 F.3d at 965). Defendants have faced criminal liability under § 111 when they assaulted an off-duty park ranger enforcing park rules, <u>see</u> <u>United States v. Hohman</u>, 825 F.2d 1363 (9th Cir. 1987), an off-duty DEA officer getting a haircut and overhearing a robbery in progress, <u>see</u> <u>United States v. Reid</u>, 517 F.2d 953 (2d Cir. 1975), an IRS agent repossessing a car, <u>see</u> <u>United States v. Streich</u>, 759 F.2d 579 (7th Cir. 1985), a federal judge walking to the federal courthouse on a Sunday evening to research a case, <u>United States v. Boone</u>, 738 F.2d 763 (6th Cir. 1984), a federal agent detaining a state-charged suspect, <u>United States v. Lopez</u>, 710 F.2d 1071 (5th Cir. 1983), and an off-duty deputy United States Marshal arresting a suspect after coming upon a street fracas, <u>United States v. Hoy</u>, 137 F.3d 726 (2d Cir. 1998). "Each of these cases illustrates the fluidity of 'while engaged' and refuses to cage 'official duties' either with a rigid time line or highly circumscribed activity." <u>United States v. Holder</u>, 256 F.3d at 964. "Congress has apparently made no attempt to circumscribe these holdings." <u>Id.</u> (citation omitted).

## ANALYSIS

The Court notes, as an initial matter, that it must apply the version of § 111 in effect at the time the conduct underlying the charged offense occurred. The incident in this case took place on June 20, 2007, before the recent amendment, and thus the Court applies the statute as written before the 2008 amendment. Perea has raised two objections to the United States' jury instruction: (i) that the first element of § 111 should only state "assaulted," and not "resisted, opposed, impeded, intimidated, or interfered with," as the action the jury should decide whether Perea committed; and (ii) that the instruction on official duties should not describe actions encompassed within that term.

I. **THE COURT WILL OVERRULE PEREA'S OBJECTION THAT THE UNITED STATES' PROPOSED INSTRUCTION VIOLATES DUE PROCESS AND THAT § 111(b) REQUIRES UNDERLYING PHYSICAL CONDUCT.**

Perea objects to the United States' instruction on the first element of § 111(b), because he argues that including any of the six enumerated acts beyond "forcibly assaulted" both violates his due-process rights and is improper because § 111(b) requires underlying assaultive conduct. The United States' proposed instruction on the first element of § 111(b), which is in proposed instruction number 9, reads: "*First:* the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Immigration and Customs Enforcement Special Agent Sonny Garcia." Government's Requested Jury Instructions at 14. Because the Tenth Circuit has previously ruled that the statutory language of § 111 does not violate due process, and because the cases which hold that § 111 convictions require underlying assaultive conduct apply only to § 111(a), and Perea is charged with violating § 111(b), the Court will overrule Perea's objections.

A. **THE TENTH CIRCUIT HOLDS THAT § 111 DOES NOT VIOLATE THE DUE-PROCESS CLAUSE.**

First, Perea argues that including any other enumerated act beyond "assault" in the first element of § 111 violates his due-process right because he was not on notice that acts beyond assault could constitute a crime. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008). "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954). Perea argues that he was without notice that any activity short of assault could be a felony offense, because he perceived no law-enforcement activity

-18-

taking place or a discernable law enforcement presence.  The Tenth Circuit, in United States v. Linn, rejected a challenge that § 111 does not provide notice of the actions it proscribes, stating: "§ 111 clearly gives a person of ordinary intelligence fair notice of what conduct is proscribed and meets the test of definiteness set out in United States v. Harriss, 347 U.S. 612 (1954)." United States v. Linn, 438 F.2d at 458.  Ignorance of the law is no excuse for committing a crime, and the properly promulgated statute put Perea on notice that his conduct could constitute a felony. See Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 68 (1910)(stating that "innocence cannot be asserted of an action which violates existing law, and ignorance of the law will not excuse."); United States v. Platte, 401 F.3d 1176, 1183-84 (10th Cir. 2005)("As a general rule, however, ignorance of the law is no excuse -- one is guilty of the crime if she intends to engage in the conduct that is prohibited by the criminal statute.").  The Supreme Court in United States v. Feola held that "in order to incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein specified."  420 U.S. at 684.  The Supreme Court noted that there

> may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea* . . . .  In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

420 U.S. at 686.  The issue of intent is a fact question, however, for the jury to resolve, and is not justification for why the Court should find that the enumerated acts in § 111 are unconstitutionally vague.  The Court finds no reason to not follow in this case the Tenth Circuit's finding that a defendant has fair notice of the acts § 111 proscribes, and thus overrules Perea's objection that any act beyond "assault" used in the instruction of the first element violates his due-process rights.

### B.    A CONVICTION UNDER § 111(b) REQUIRES THE COMMISSION OF ANY ACTS DESCRIBED IN § 111(a), NOT SOLELY ASSAULT.

Perea further argues that assault is the offense which Congress intended to proscribe, and that

Congress did not intend to outlaw "the mere incivility of resistance, opposition, impediment, intimidation, or interference." Defendant's Objections at 8. In enacting § 111, Congress intended broadly to prohibit harm or threats thereof to certain federal officials, as well as interference with their law-enforcement activities. See United States v. Feola, 420 U.S. at 678-84. In United States v. Feola, the Supreme Court discussed at length Congress' intent in enacting § 111. The Supreme Court noted that the purpose of § 111 is to insure the integrity of law-enforcement pursuits, and that all of the actions, not only assault, serve Congress' intent, stating:

> This conclusion is supported by the wording of § 2 of the 1934 Act (and of the present § 111), for that section outlawed more than assaults. It made it a criminal offense "forcibly [to] resist, oppose, impede, intimidate, or interfere with" the named officials while in the performance of their duty. Statutory language of this type had appeared as early as 1866, in § 6 of the Act of July 18 of that year, 14 Stat. 179, embracing a comprehensive scheme for the prevention of smuggling. The bulk of that statute, to be sure, was concerned with essentially regulatory matters; § 6, however, proscribed a broad range of actions -- beyond simple forcible resistance -- that would frustrate effective enforcement of the body of the statute. In employing a similar formulation in 1934, Congress could be presumed to be going beyond mere protection of the safety of federal officers without regard to the integrity of their official functions.

420 U.S. at 682 n.17. The Supreme Court in United States v. Feola held that "in order to incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein specified." 420 U.S. at 684. The Tenth Circuit has not directly addressed the six enumerated acts in § 111(a), but in United States v. Austin, 933 F.2d 833 (10th Cir. 1991), the Tenth Circuit upheld the district court's instruction to the jury that they should determine the case based on six enumerated acts in § 111 in the disjunctive -- "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" -- rather than using the conjunctive language in the indictment -- "forcibly assaults, resists, opposes, impedes, intimidates, and interferes." In United States v. Sherwin, No. 00-40091-01, 2001 U.S. Dist. LEXIS 9971 (D. Kan. Feb. 22, 2001)(Rogers, J.), the United

States District Court for the District of Kansas rejected the defendant's argument that the indictment was duplicitous because it charged him with knowingly and forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with federal officers, and the Honorable Richard D. Rogers, United States District Judge, found that: "Congress created the single crime of harming or threatening a federal official, and specified six ways by which the crime could be committed. The indictment was not duplicitous." 2001 U.S. Dist. LEXIS 9971, at *6.  Judge Rogers noted: "The court agrees with the Eighth Circuit that § 111(a)(1) merely enumerates several ways of committing the same offense. We believe that the Tenth Circuit would reach the same conclusion." 2001 U.S. Dist. LEXIS 9971, at *7.   In United States v. Street, 66 F.3d 969 (8th Cir. 1995), the United States Court of Appeals for the Eighth Circuit stated:

> Section 111(a)(1) defines a single crime, not multiple offenses. The offense is intimidating or threatening by specified acts federal officials engaged in the performance of official duties.  The statute lists all of the acts of violation in one sentence, and imposes a single penalty for all of them, "a construction which indicates that Congress did not mean to create more than one offense." United States v. Mal, 942 F.2d 682, 688 (9th Cir. 1991).

66 F.3d at 974.  The Second Circuit has stated: "In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of bodily harm that might reasonably deter a federal official from the performance of his or her duties." United States v. Walker, 835 F.2d 983, 987 (2d Cir. 1987).

The United States interpreted Perea's objection argument to be that, for each of the acts enumerated in § 111, the United States must still prove assaultive conduct.  While Perea's argument in his briefing was unclear, Mr. Winterbottom argued at the hearing that his position is that the Court should adopt the Ninth Circuit's interpretation of § 111, and find that assaultive conduct is required for conviction under § 111, and thus limit the jury instruction on the first element solely to "forcibly

assaulted."  Apr. 9 Tr. at 18:10-13 (Winterbottom).  The United States argues that the split among

the Courts of Appeals regarding underlying assaultive conduct is with regards to convictions under

§ 111(a) and not § 111(b), and that Perea has been charged with § 111(b), because he used a firearm

-- a deadly or dangerous weapon.  The United States also argues that, if the Court finds that it must

address the split regarding assaultive conduct under § 111(a), which the United States believes it

need not resolve, the Court should adopt the reasoning of the Fifth and Sixth Circuits, which hold

that each of the six enumerated acts are means of violating § 111(a) and that assaultive conduct is

not required for a § 111(a) conviction.

        The Tenth Circuit in United States v. Hathaway held that § 111 breaks down into three

separate offenses -- a misdemeanor offense and felony offense under § 111(a), and a felony offense

under § 111(b).  The Tenth Circuit addressed the ambiguity in what differentiates "simple assault"

-- the misdemeanor offense -- from "all other cases" assault -- the felony offense -- under § 111(a).

The Tenth Circuit found that "all other cases" assault under § 111(a) refers to any assault that is

neither "simple assault" nor assault as defined in § 111(b); thus, "all other cases" assault under

§ 111(a) includes any assault that involves actual physical contact, or intent to commit murder or

any felony other than those referred to in 18 U.S.C. § 113(a)(2), but does not involve deadly or

dangerous weapon or bodily injury.  See 318 F.3d at 1008-09.  Thus, the Tenth Circuit held, to be

convicted of a felony under § 111(a), the government must prove, in addition to the other required

elements, "actual physical contact or the intent to commit murder or any other felony other than

those referred to in § 113(a)(2)."  318 F.3d at 1009.  The Tenth Circuit did not find that convictions

under § 111(b) require the additional element of actual physical contact or intent to commit a felony,

and distinguished cases involving a deadly or dangerous weapon or bodily injury from "all other

cases."  318 F.3d at 1008.  The Court has found no indication that convictions under § 111(b) also

require actual physical contact or intent to commit murder or other felony.  For example, in United States v. Gruber, 192 Fed. Appx. 773 (10th Cir. 2006), Federal Bureau of Investigation ("FBI") agents spotted the vehicle of the defendant, a suspect in an armed robbery, and attempted to stop the vehicle.  The defendant verbally refused to stop, a high-speed chase ensued, and, at some point, the defendant abandoned his vehicle and began to run.  The FBI agents gave chase, and one agent identified himself with his gun drawn, told the defendant he was under arrest, and ordered him to put his hands up.  The defendant initially complied, but then moved for cover, dropped his hands to his waist out of the agent's line of sight, and bent down.  The FBI agent fired at the defendant, hitting him in the neck, and causing him to fall to the ground.  The FBI agent approached the wounded defendant and found a gun on the ground next to him.  The defendant was charged, and convicted with, among other charges, "assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer while using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a) & (b)."  192 Fed. Appx. at 775.  The defendant appealed, arguing that there was insufficient evidence to support a conviction under § 111(b).  The instructions to the jury on the elements of § 111(b) were:

> One: The defendant forcibly assaulted, resisted, opposed, impeded, intimidated or interfered with an officer or employee of the United States, Craig Overby;
>
> Two: At the time, Craig Overby was engaged in official duties;
>
> Three: The defendant used a deadly or dangerous weapon.

192 Fed. Appx. at 777.  The Tenth Circuit found that there was no evidence that the defendant disclosed the gun to the FBI agent, and thus there was insufficient evidence to show that he used the gun to assault, resist, oppose, impede, intimidate, or interfere with the FBI agent, and thus overturned the conviction.  See 192 Fed. Appx. at 778.  The Tenth Circuit did not, however, raise

concerns that there was no physical contact or intent to commit another felony, and found as a persuasive fact in its analysis that an FBI agent who interviewed the defendant explained that the defendant never told him that he intended to "to pull [the] gun and intimidate or interfere with . . . Agent Overby."  192 Fed. Appx. at 778.

Moreover, the Court has not found any cases that have held that § 111(b) convictions require underlying assaultive conduct.  The split between the Ninth Circuit, and the Fifth and Sixth Circuits, addresses § 111(a), and each decision refers to the Tenth Circuit's <u>United States v. Hathaway</u> categorization of "all other cases" assault under § 111(a).  The dispute among the Courts of Appeals concerns convictions under § 111 in which there is not a deadly or dangerous weapon, and where there is no bodily injury.  The parties in this case do not dispute that there was a deadly or dangerous weapon involved -- Perea's firearm.  Perea's alleged conduct, thus, falls in the ambit of § 111(b), not just § 111(a).

Although it may be unnecessary for the Court to decide upon which side of the underlying assaultive-conduct issue it falls to sustain a conviction under § 111(a), given that a conviction under § 111(b) requires the "commission of any acts described in subsection (a)," it is appropriate for the Court to address what is required to commit the acts of subsection (a).  Subsection (b) does not specify whether the underlying commission of any acts described in subsection (a) -- forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with -- must constitute the misdemeanor or felony offense.  Rather, the use of a deadly or dangerous weapon or the infliction of bodily injury  makes the underlying act a felony, regardless whether it would constitute a misdemeanor or felony under subsection (a).  What the Court must resolve, therefore, is what is the minimum conduct necessary to commit any of the acts of subsection (a) -- in other words, "whether § 111 is limited only to assaults or includes all the actions spelled out in § 111(a)."  <u>United States</u>

-24-

v. Gagnon, 553 F.3d at 1025 n.4.

In United States v. Hathaway, the Tenth Circuit determined that the misdemeanor offense in § 111 requires simple assault -- "assault which does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or any felony other than those referred to in § 113(a)(2)."  318 F.3d at 1008.  The Tenth Circuit looked to the common-law definition of simple assault, which "is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." 318 F.3d at 1008 (quoting United States v. Joe, 831 F.2d 218, 220 (10th Cir. 1987)).  The Tenth Circuit also looked to the language from § 113 -- which proscribes only assault, not all six enumerated acts in § 111.  The Tenth Circuit did not address how its designation of the misdemeanor offense as simple assault affected the other five enumerated acts.  The Court, however, finds the Sixth Circuit's reading of United States v. Hathaway, and the effect of its reading on the other five enumerated acts, persuasive.  The Sixth Circuit in United States v. Gagnon held that

> the phrase "simple assault" differs from "all other cases" in that "simple assaults" involve the commission of any of the prohibited actions listed in § 111(a)(1) and § 111(a)(2), while "all other cases" covers the commission of these same violations plus the intent to commit a felony or resulting physical contact from forcible (and thus intentional) action.

553 F.3d at 1027.  The Sixth Circuit, building upon the holdings of the Fifth Circuit in United States v. Hazlewood, 526 F.3d 862 (5th Cir. 2008), and the Seventh Circuit in United States v. Vallery, 437 F.3d 626 (7th Cir. 2006), reasoned that "simple assault" in § 111 should be read in light of the common-law definition, but should also be treated as a term of art to incorporate the other five actions proscribed in § 111(a)(1) and § 111(a)(2).   United States v. Gagnon, 553 F.3d 1021. See United States v. Vallery, 437 F.3d at 633 ("Moreover, in addition to the plain language of the

-25-

statute, case law supports Vallery by stating or implying that the simple assault provision applies

to the entirety of § 111(a)."); United States v. Yates, 302 F.3d 818, 822 (8th Cir. 2002)("We hold

that, in the context of § 111, the definition of simple assault is conduct in violation of § 111(a),

which does not involve actual physical contact, a dangerous weapon, serious bodily injury, or the

intent to commit murder or another serious felony.").  The Court does not believe that interpreting

the Tenth Circuit's understanding of simple assault in United States v. Hathaway to apply to all six

of the enumerated acts in § 111(a) is in conflict with subsequent Tenth Circuit cases involving § 111,

which have not collapsed the other five enumerated acts in § 111(a) into only assault.  In United

States v. Aguayo-Gonzales, 472 F.3d 809 (10th Cir. 2007), the Tenth Circuit stated that a conviction

under § 111 can be either a misdemeanor or a felony, and explained:

> The third count in Mr. Aguayo-Gonzalez's indictment can be either a misdemeanor
> or a felony, depending on the seriousness of the conduct.  18 U.S.C. § 111.
> Section (a) of the provision, which is a misdemeanor, imposes up to one year of
> imprisonment on anyone who "forcibly assaults, resists, opposes, impedes,
> intimidates, or interferes" with an officer performing his official duties.  Section (b)
> raises the crime to a felony, punishable by up to 20 years imprisonment, if the
> defendant uses a deadly or dangerous weapon or inflicts bodily injury. Although the
> indictment did not specify whether [the defendant] was being charged under section
> (a) or (b), both parties and the judge, at trial, in the jury instructions, and at
> sentencing, treated the charge as a misdemeanor. Both parties assume the charge to
> be a misdemeanor for purposes of this appeal.

472 F.3d at 810.[3]  In United States v. Gruber, the Tenth Circuit stated that §111(b) "provides for an

enhanced penalty where a defendant 'uses a deadly or dangerous weapon' when assaulting, resisting,

opposing, impeding, intimidating, or interfering with a federal officer."  192 Fed. Appx. at 777.  The

Tenth Circuit Criminal Pattern Jury Instructions for § 111 provides all six enumerated acts in the

---

[3] The Tenth Circuit in United States v. Aguayo-Gonzales did not address that § 111(a) also
provides for a felony offense, in addition to the misdemeanor offense.  The Tenth Circuit noted,
however, that both parties assumed the charge to be a misdemeanor for purposes of the appeal.
See 472 F.3d at 810.

elements of the offense: "[T]he defendant forcibly [assaulted] [resisted] [opposed] [impeded] [intimidated] or [interfered with] [the person described in the indictment]"  10th Cir. Crim. Pattern Jury Instr. 2.09, at 86 (2005).  The Court does not read United States v. Hathaway to render the other five acts besides assault in § 111 meaningless, but rather that its understanding of "simple assault" encompasses the cases where a defendant "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" without physical contact or the intent to commit a serious felony.  318 F.3d at 1008. The Court, therefore, believes the Sixth Circuit is correct in stating that "simple assault" is "a term of art that includes the forcible performance of any of the six proscribed actions in § 111(a) without the intent to cause physical contact or to commit a serious felony," while "'all other cases' covers the commission of these same violations plus the intent to commit a felony or resulting physical contact."  United States v. Gagnon, 553 F.3d at 1027.  Moreover, Congress' recent amendment to the statutory language -- striking out "all other cases" and specifying that the line between misdemeanors and felonies under § 111(a) is drawn at physical contact or acting with the intent to commit another crime -- supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise.  As the Fifth Circuit points out in United States v. Williams, "Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line [in § 111(a)] at physical contact, but it declined the opportunity to delete the other forms of conduct proscribed by the statute or to otherwise clarify that § 111(a)(1) convictions require an underlying assault."  2010 U.S. App. LEXIS 5997, at *12.

Although the Court does not believe that the six enumerated acts should be merged into an instruction which states only "forcibly assaulted," as Mr. Winterbottom suggests, the Court believes what distinguishes the unlawful acts in § 111 from acts of "mere incivility," in Mr. Winterbottom's words, is the requirement of force.  Force is required, whether the defendant is charged with the

misdemeanor or felony offense in § 111(a), and thus is an underlying requirement for a conviction under § 111(b).  See United States v. Arrington, 309 F.3d 40, 44 (D.C. Cir. 2002)("the adverb 'forcibly' modifies each of the verbs it precedes, and not only 'assault.'"); United States v. Schrader, 10 F.3d 1345, 1348 (8th Cir. 1993)(reversing a conviction under § 111 because the district court instructed the jury that non-forcible resisting, opposing, impeding, intimidating, or interfering violated § 111, and holding that "[f]orce is a necessary element of any § 111 violation."). Black's Law Dictionary defines "force" as "power, violence, or pressure directed against a person or thing," Black's Law Dictionary 717 (9th ed. 2009), and defines "forcible" as "effected by force or threat of force against opposition or resistance."  Black's Law Dictionary 718 (9th ed. 2009).  The Tenth Circuit, in United States v. Disney, stated that "Section 111(a) makes it a crime to forcibly assault or intimidate a law enforcement officer," and found that the word "forcibly," as used in § 111(a) "should not be construed as excess verbiage" and "ought to limit the proscribed acts to fewer than would fit the definition of the unmodified verbs alone."  253 F.3d at 1214.  The Tenth Circuit held that the government may prove the "forcibly" element of "forcibly assault or intimidate" by proof of threats rather than by proof of actual touching, but the defendant must have had the present ability to harm the federal officer at the time he made the threat against the officer. See 253 F.3d at 1214-15.  See also United States v. Street, 66 F.3d 969, 977 (11th Cir. 1995)("The statute's force requirement therefore may be satisfied even if the defendant has no physical contact with the officer, as long as his conduct places the officer in fear for his life or safety."); United States v. Schrader, 10 F.3d 1345, 1348 (8th Cir. 1993)("Force is a necessary element of any § 111 violation.  However, that element may be satisfied by proof of actual physical contact, or by proof of 'such a threat or display of physical aggression toward the officer as to inspire fear of pain,

bodily harm, or death.'")(quoting <u>United States v. Walker</u>, 835 F.2d 983, 987 (2d Cir. 1987)).[4]

Thus, forcibly resisting, forcibly opposing, forcibly impeding, forcibly intimidating, or forcibly

interfering with a federal officer goes beyond "mere incivility."  The Court recognizes that the case

law describing "forcibly" abuts closely to the meaning of "assault," but the Court does not believe

that this means that it is proper to foreclose an instruction on any of the other six enumerated acts

in § 111.  Congress has not removed the other enumerated acts in § 111, and the Tenth Circuit has

given no indication that a jury should not consider whether a defendant forcibly resisted, opposed,

impeded, intimidated or interfered with a federal officer. The Court, therefore, will not restrict the

first element to only "forcibly assaulted" and will, thus, overrule Perea's objection.

### C.   THE COURT WILL INCLUDE BOTH FORCIBLE ASSAULT AND FORCIBLE INTIMIDATION IN THE INSTRUCTION ON THE FIRST ELEMENT OF 18 U.S.C. § 111.

The Tenth Circuit Criminal Pattern Jury Instructions for Assaulting a Federal Officer in

violation of 18 U.S.C. § 111 provides the elements of the offense, stating:

> *First*: the defendant forcibly [assaulted] [resisted] [opposed] [impeded] [intimidated]
> or [interfered with] [<u>the person described in the indictment</u>];
>
> *Second*: the person [assaulted] [resisted] [opposed] [impeded] [intimidated] or
> [interfered with] a federal officer who was then engaged in the performance of his
> official duty, as charged; and

---

[4] The Eighth Circuit Model Criminal Jury Instructions for § 111 include an instruction for "forcibly" which states:

> "Forcibly" means by use of force.  Physical force is sufficient but actual physical contact is not required.  You may also find that a person who, in fact, has the present ability to inflict bodily harm upon another or who threatens or attempts to inflict bodily harm upon such person acts forcibly.  In such case, the threat must be a present one.

8th Cir. Model Crim. Jury Instr. 6.18.111, at 135 (2009).

*Third:* the defendant did such act[s] intentionally.

[*Fourth*: in doing such acts, the defendant [used a deadly or dangerous weapon] [inflicted bodily injury]].

10th Cir. Crim. Pattern Jury Instr. 2.09, at 86 (2005).  Brackets in the pattern criminal instructions "indicate optional material, or material that needs to be adapted to a given case."  10th Cir. Crim. Pattern Jury Instr. Introductory Note, at vii.  Jury instructions should state the governing law and provide the jury with an intelligent, meaningful understanding of the applicable issues and standards.  See United States v. LaVallee, 439 F.3d 670, 684 (10th Cir. 2006).  The Court believes the evidence is sufficient to include both assault and intimidate in the first element of the jury instruction on § 111.  The Court also finds it is proper to modify both assault and intimidate with "forcibly."  United States v. Arrington, 309 F.3d at 44 ("[T]he adverb 'forcibly' modifies each of the verbs it precedes, and not only 'assault.'"); United States v. Schrader, 10 F.3d at 1348; United States v. Giampino, 680 F.2d 898, 902 (2d Cir. 1982)("It is clear that § 111, which reaches one who 'forcibly assaults, resists, opposes, impedes, intimidates or interferes with' a federal marshal performing his duties, requires proof of force").[5]

───────────

[5] At trial, Mr. Winterbottom asked the Court to use the definition it gave for "forcible assault" for the term "forcibly."  The Court declined, because the definition for "forcible assault," which the Court adopted from the Tenth Circuit's Pattern Criminal Jury Instruction, encompasses a combined meaning of force and assault, not force alone.  The Court believes that assault is a word which the public has often heard or used, but may not know its legal meaning and definition.  The instruction, therefore, needs to define forcible assault.  Forcibly, on the other hand, means "use of force."  8th Cir. Model Crim. Jury Instr. 6.18.111, at 135 (2009).  See Ninth Circuit Model Criminal Jury Instructions 8.2: Assault on Federal Officer [with a Deadly or Dangerous Weapon] (18 U.S.C. § 111)(2008)("There is use of force when one person intentionally [strikes][wounds] another, or when one person intentionally makes a display of force which reasonably causes a person to fear immediate bodily harm.").  The word is self-defining and thus needs no separate definition.  While more can be said about "forcibly," what the Court could have said would not have been helpful to Perea.  See, e.g., 8th Cir. Model Crim. Jury Instr. 6.18.111, at 135 ("Physical force is sufficient but actual physical contact is not required.  You may also find that a person who, in fact, has the present ability to inflict bodily harm upon another or who threatens or attempts to inflict

The Court believes that the evidence presented supports an instruction including forcibly intimidated.  There is evidence that Perea drove up alongside Garcia's vehicle, yelled at him in an aggressive manner, called him a "son of a bitch," placed a firearm in his lap, and told Garcia "I don't care if you're a cop."  The Court believes the evidence is sufficient that a reasonable jury could find forcible intimidation.  See United States v. Caruana, 652 F.2d 220, 222-23 (1st Cir. 1981)(affirming a conviction under § 111 for forcible intimidation because a reasonable jury could infer that the defendant released his dogs upon federal agents to intimidate them); United States v. Thill, No.90-3740, 1991 U.S. App. LEXIS 28630 (7th Cir. Nov. 12, 1991) (affirming a conviction for forcible intimidation under § 111).  In United States v. Temple, 447 F.3d 130 (2d Cir. 2006), the district court found that the defendant's telephone call to a federal officer in which he stated "I'm gonna fuck you up" was sufficient evidence of forcible intimidation, but the Second Circuit disagreed, finding that the threat was not immediate, and noting that cases affirming § 111 convictions generally involve face-to-face encounters.  See 447 F.3d at 140 (citing United States v. Street, 66 F.3d 969, 977-78 (8th Cir. 1995); United States v. Fernandez, 837 F.2d 1031, 1033 (11th Cir. 1988)).  Here, Perea and Garcia had a face-to-face encounter, Perea had a firearm, there is evidence that he stated he did not care if Garcia was a cop, and it is reasonable to assume that Garcia perceived a threat of immediate harm -- especially given that the evidence indicates that Garcia also drew his firearm.   The first element in the instruction on § 111 will therefore state: "*First:* Mr. Perea forcibly assaulted or forcibly intimidated Sonny Garcia."

## II.     THE COURT WILL SUSTAIN IN PART AND OVERRULE IN PART PEREA'S OBJECTION TO THE UNITED STATES' INSTRUCTION ON OFFICIAL DUTIES.

The United States' proposed instruction on official duties states:

---

bodily harm upon such person acts forcibly.  In such case, the threat must be a present one.").

You are instructed that a Immigration and Customs Enforcement Special Agent Sonny Garcia is a federal officer, and that it is a part of the official duty of such an officer to conduct a variety of federal investigations, which often necessitate travel in Agent Garcia's government-issued vehicle.

A federal officer is "engaged in the performance of his official duties" if he is acting within the scope of what he is employed to do, rather than engaging in a personal frolic of his own. In determining whether a federal officer is engaged in the performance of his official duties, you may consider whether the federal officer was driving a government-issued vehicle at the time of the incident, whether the federal officer was driving to or from work, and whether the federal officer's position entitles him to availability pay based on the fact that officer is always on call.

Government's Requested Jury Instructions at 15. Perea objects that this instruction as written operates as a conclusive presumption on a key and contested element of the offense, in violation of due process and the presumption of innocence. The Tenth Circuit Pattern Criminal Jury Instructions provide the following instruction on official duties: "You are instructed that a [name agent] is a federal officer, and that it is a part of the official duty of such an officer to [name duty performed, e.g., execute arrest warrants issued by a judge or magistrate of this court]." 10th Cir. Crim. Pattern Jury Instr. 2.09, at 87. Perea's proposed instruction states: "You are instructed that Sonny Garcia is a federal officer employed by Immigration and Customs Enforcement (ICE), and that it is a part of the official duty of such an officer to apprehend persons illegally within the United States." See Defendant's Proposed Jury Instructions at 2-3, filed March 26, 2010 (Doc. 39). The Tenth Circuit has stated that there is no bright-line test to define performance of official duties, see United States v. Holder, 256 F.3d at 963, and has recognized that "each case . . . requires a fact specific analysis, but no case will turn on any one factor." United States v. Ama, 97 Fed. Appx. at 900. The question of whether Garcia was acting within the scope of his official duty is a factual determination and is properly left to the jury. The Court believes it is proper to give the jury some guidance, but not to the extent that the United States has requested. It is the Court's duty to provide the jury with

an intelligent, meaningful understanding of the applicable issues and standards, and not to confuse them.  See United States v. Fredette, 315 F.3d at 1240-41 (10th Cir. 2003).  The factual issue in this case is whether Garcia, while driving home in his government-issued vehicle, was acting within the scope of his official duties.  Courts of Appeals have found that a federal officer is within the scope of his or her official duties when traveling in his or her government-issued vehicle, and when on the way to or from work.  In United States v. Hoffer, 869 F.2d 123 (2d Cir. 1989), the Second Circuit found that a DEA agent was engaged in official duties when she was attacked because "she was using her government-owned automobile -- an automobile issued to her for work-related use only -- to return from her surveillance assignment.  She was to remain 'on call' for further assignment, and the automobile was not yet secured when she was attacked."  869 F.2d at 126.  See United States v. Stephenson, 708 F.2d 580, 581 (11th Cir. 1983)(finding that an FBI agent "was engaged in the performance of her official duties, as indicated by the fact that she was on her way to report for work at the FBI office . . . .").  The Court is uncomfortable with the United States' proposed instruction as phrased, as it comes too close to instructing the jury to reach the necessary conclusion that, because Perea was in his official vehicle on the night in question, he was on duty.  The Court believes that some instruction is necessary to aid the jury in the determination of what it means for an ICE agent to be engaged in his official duties, but will not instruct the jury in the presumptive manner the United States proposes.  Rather, the Court will give the following instruction, which incorporates appropriate parts of both Perea's and the United States' proposed instructions: "You are instructed that Mr. Garcia is a federal officer, and that it is a part of the official duty of such an officer to apprehend persons illegally within the United States and to conduct a variety of federal investigations, which often necessitate travel in his government-issued vehicle."  The Court believes that this instruction gives the proper guidance to the jury and provides them enough information for

them to assess whether Garcia was acting within the scope of what an ICE agent is expected to do, or was merely taking a personal frolic of his own.  See United States v. Young, 614 F.2d 243, 244 (10th Cir. 1980).  The Court therefore will overrule in part and sustain in part Perea's objection to the United States' proposed instruction.

**IT IS ORDERED** that the Defendant's Objections to the Government's Jury Instructions and His Response to the Government's Objection to the Court's Preliminary Instruction is overruled in part and sustained in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
   United States Attorney
Jack E. Burkhead
Shana B. Pennington
   Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*


Richard A. Winterbottom
   Assistant Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*