# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                        No. CR 09-1034 JB

LEROY PEREA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for New Trial, filed April 14, 2010 (Doc. 75).  The Court held a hearing on May 13, 2010.  The primary issue is whether the Court should grant Defendant Leroy Perea's motion for a new trial pursuant to rule 33 of the Federal Rules of Criminal Procedure because: (i) the elements instruction for 18 U.S.C. § 111 instructed the jury that it could find Perea guilty of forcibly intimidating or forcibly assaulting the officer; and (ii) the jury was not instructed as to the meaning of "forcibly intimidated."  Because the Court has previously addressed and rejected Perea's argument that a conviction for forcible intimidation under § 111 requires assaultive conduct, and because no party proposed an instruction for forcible intimidation at trial, because the term is commonly understood, and because the United States Court of Appeals for the Tenth Circuit's  Pattern Criminal Jury Instructions do not advise instructing on a definition of forcible intimidation, the Court finds that the interests of justice will not be served by a new trial and therefore will deny the motion.

## FACTUAL BACKGROUND

On April 22, 2009, the grand jury issued an Indictment charging:

> On or about June 20, 2007, in Bernalillo County, in the District of New Mexico, the defendant, Leroy Perea, forcibly assaulted, resisted, opposed, impeded, intimidated and interfered with an officer or employee of the United States, Immigration and Customs Enforcement Special Agent Sonny Garcia, with a deadly and dangerous weapon, a Smith and Wesson A945 pistol, serial number TZD-5725, while such person was engaged in or on account of the performance of official duties.

Indictment, filed April 22, 2009 (Doc. 2). The Court held a jury trial on April 7, 2010 through April 9, 2010. Both Perea and Garcia testified at trial. Garcia testified that, on June 20, 2007, he was driving his Immigration and Customs Enforcement ("ICE") vehicle -- a Lincoln Navigator with Chihuahua, Mexico plates, which Garcia explained was to blend in when the agents are conducting surveillance or investigating -- home from an investigation in the south valley of Albuquerque, New Mexico. See Transcript of Trial at 40:3-42:13 (taken Apr. 8, 2010)(Burkhead, Garcia) ("Apr. 8 Tr.").[1]

Perea testified that, while he was driving on Paseo Del Norte, Garcia's vehicle cut him off, causing him to swerve and almost hit a guard rail. See Transcript of Trial at 29:8-15 (taken Apr. 9, 2010)(Winterbottom, Perea) ("Apr. 9 Tr."). Garcia testified that, on his drive home, he approached the intersection of Eagle Ranch Road and Paradise Boulevard, a vehicle behind him flashed its lights, and, at the intersection, the car -- Perea's vehicle -- pulled up next to Garcia's vehicle. See Apr. 8 Tr. at 47:12-50:3 (Burkhead, Garcia). Garcia testified that Perea rolled down his window and yelled: "Don't you cut me off, son of a bitch," and he saw Perea reach towards the center of his vehicle for a gun. Apr. 8 Tr. at 50:23-52:10 (Burkhead, Garcia); id. at 96:17-18 (Garcia, Winterbottom); id. at 112:18-25 (Garcia, Winterbottom). Perea testified that he pulled up next to Garcia's vehicle and told him, very upset: "You've just run us off the road, you son of a

---

[1] The Court's citations to the transcripts of the trial and hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

bitch.  What's wrong with you?"  Apr. 9 Tr. at 33:12-34:2 (Winterbottom, Perea).  Perea testified

that Garcia started arguing with him, and Perea got scared, so he reached into the center console of

his vehicle for his gun, which was holstered, and placed it in his lap between his legs.  See Apr. 9 Tr.

at 34:16-37:10 (Winterbottom, Perea).   Perea testified that he did not point the gun at Garcia, and

Garcia testified that he never saw Perea's gun pointed at him.  See Apr. 8 Tr. at 102:11-12 (Garcia);

Apr. 9 Tr. at 37:25-38:7 (Winterbottom, Perea).   Garcia testified that he was scared, so he reached

beneath  his  shirt,  unclipped  his  badge,  and  said:  "Police."    Apr.  8  Tr.  at  52:13-53:3

(Burkhead, Garcia).  Perea testified that he did not hear Garcia, but that his wife, in the passenger

seat beside him, told him that Garcia said he was a cop.  See Apr. 9 Tr. at 39:9-12 (Perea).  Perea

testified that he told Garcia: "I don't care if you're a cop, you don't have no right to run me off the

road," and then he drove off.  Apr. 9 Tr. at 39:12-15 (Perea).  Garcia testified that Perea responded:

"I don't give a shit who you are," so Garcia put his badge on the dashboard and pulled out his

handgun, and Perea drove away.  Apr. 8 Tr. at 53:25-55:20 (Burkhead, Garcia).

## PROCEDURAL BACKGROUND

The jury returned a verdict of guilty on April 9, 2010.  See Verdict, filed Apr. 9, 2010

(Doc. 71).  On April 16, 2010, Perea filed his motion for a new trial.  Perea argues two grounds for

a new trial: (i) the elements instruction mistakenly instructed the jury that it could find him guilty

of the charge by intimidating but not assaulting the officer; and (ii) the jury was not instructed as

to the meaning of "forcibly intimidated."  Motion at 3, 5; Reply to Response to Motion for New

Trial, at 1, filed May 12, 2010 (Doc. 86).

### 1.    Jury Instruction Discussions During Trial.

During  the  trial,  the  Court  conducted  conversations  with  the  attorneys,  Richard

Winterbottom, Perea's attorney, and Assistant United States Attorneys Jack Burkhead and Shana

Pennington, about the jury instructions.  On April 9, 2010, Mr. Winterbottom indicated that he believed the first element of the instruction on 18 U.S.C. § 111 "should be Mr. Perea forcibly assaulted or forcibly intimidated Sonny Garcia."  Apr. 9 Tr. at 63:8-10 (Winterbottom).  The United States agreed that forcibly modifies both assault and intimidation.  See Apr. 9 Tr. at 63:23-64:5 (Pennington).  Mr. Winterbottom also argued "that we also need to, in the definition of the term forcible assaults, we also need to put [what] the terms forcible assault and forcibly intimidating means et cetera."  Apr. 9 Tr. at 64:11-14 (Winterbottom).  Ms. Pennington objected, arguing that the Tenth Circuit, in its pattern jury instructions, made the decision to define only forcible assault and not forcible intimidation.   See Apr. 9 Tr. at 64:15-65:4 (Pennington); id. at 116:7-16 (Pennington).  Ms. Pennington added: "So if we want to add one, we would have to craft one and to be honest, I don't have a suggestion of what that would be.  I think it's probably guided by common sense."  Apr. 9 Tr. at 116:16-19 (Pennington).  Ms. Pennington argued that the definition of forcibly includes threats of immediate bodily harm, and that term would apply to both assault and intimidate.  See Apr. 9 Tr. at 65:7-10 (Pennington).  She contended that she read the Tenth Circuit's pattern jury instruction to indicate that forcible assault is a legal term of art, but that the other prescribed acts are commonly understood terms and do not require further instruction to be understood.  See Apr. 9 Tr. at 65:12-21 (Pennington).  Mr. Winterbottom offered that the Court could keep the instruction on defining "forcible assault" but use it as the instruction for "forcibly," instead of "forcible assault."  Apr. 9 at 133:16-17 (Winterbottom).  The United States objected, and Ms. Pennington argued that to do so would require any conviction to require assaultive conduct.  See Apr. 9 Tr. at 133:20-134:7 (Pennington, Court).  Ms. Pennington offered that an instruction on forcibly could state that it requires a threat of immediate bodily harm, but argued that it would be best to leave the instruction alone, given that the Tenth Circuit pattern instruction has not provided

further instruction.  See Apr. 9 Tr. at 134:8-135:2 (Pennington).  The Court indicated to the parties

that it would be willing to give an instruction on forcibly intimidating or forcibly, if the parties could

agree on one.  See Apr. 9 Tr. at 136:6-9 (Court).  The parties were given a break to confer the case

law addressing 18 U.S.C. § 111 and defining forcibly, and, when they returned, they indicated that

they had not come to an agreement on language that should be in an instruction on forcible

intimidation.  Mr Winterbottom explained his position:

> We have intimidation by assault.  If we had clear-cut case of intimidation -- that is
> somebody calling up a federal agent on the phone, for example, and saying, well, if
> you go and testify tomorrow I'm -- you're going to meet bad consequences -- that's
> intimidation.  That's a different kind of assault.  Officer Garcia's testimony is
> essentially that he was assaulted.  And we're trying to fit a square peg into a round
> hole.  We're trying to fit the forcibly assaulted instruction into a forcibly intimidate,
> when, in fact, what we've got is an assault, which is by definition, intimidating,
> which is, of course, bring[s] me back to my initial objection to putting intimidation
> in at all, that I think all we have is an assault, because all assaults are intimidating but
> not all intimidations are assault.  And so -- my objection sort of brings out the
> problem that we're having of crafting a second instruction that speaks directly to the
> intimidation in this case because it is fundamentally an assault.

Apr. 9 Tr. at 139:11-140:4 (Winterbottom).  Because the attorneys were unable to craft an

instruction, and because the Tenth Circuit's pattern jury instruction does not provide an instruction

for forcible intimidation, an additional instruction was not added.

Against the United States' argument that a unanimity-of-theory instruction is not required

for a § 111 charge,[2] the Court included a unanimity-of-theory instruction and also discussed sending

---

[2] Ms. Pennington stated:

> It was my understanding, and based on your proposed instructions, I believe this is
> what the Court is contemplating at this time, is to send the jury back with a
> unanimity-of-theory instruction on page 12, instruction 9, however, to not have a
> special verdict form on page 18 in the fifth set.  And since then, last night I found a
> case, it's non-Tenth Circuit.  There is no Tenth Circuit case law on point that the
> Government could find that addresses whether or not under § 111 a unanimity theory
> instruction is required. . . .  It's United States v. Kimes, 246 F.3d 800, and in that

a special verdict form to the jury, which would include a fill-in-the-blank for the jury to fill in

"forcibly assaulted" and/or "forcibly intimidated," or asking two questions to learn what the jury

decided on each theory.  The Court inquired whether the United States would prefer a special-verdict

form, and the United States asked for one, stating that it deferred to Mr. Winterbottom whether it

would be a fill in the blank or state forcibly assaulted and/or forcibly intimidated.  See Apr. 9 Tr.

at 127:15-128:25 (Court, Pennington).  Mr. Winterbottom opposed the special-verdict form and

responded: "I prefer the verdict form as it is with one modification, and that is that the verdict form

read 'of forcibly assaulting or forcibly intimidating a federal officer,' which mirrors the elements

instruction anyway."  Apr. 9 Tr. at 129:2-9 (Court, Winterbottom).  The Court made the changes to

the verdict form that Perea requested, and, also as he requested, did not give a special-verdict form

to the jury, believing it was slightly prejudicial to ask the jury multiple times to decide Perea's guilt

under each theory, rather than asking it to decide guilt only one time.

### 2.        Arguments in the Briefs on the Motion for New Trial.

After the jury verdict, Perea hired Stephen D. Aarons as new counsel.  In his motion for a

new trial, Perea argues that there was insufficient evidence, as a matter of law, on which to convict

Perea of forcibly intimidating an officer other than assault with a deadly weapon.  See Motion ¶ 6,

at 2.  He argues that no evidence was introduced at trial of criminal misconduct other than

---

case there was no unanimity of theory instruction provided to the jury . . . the Sixth
Circuit said that a defendant charged with violating section 111 is not entitled to a
specific unanimity instruction unless the defendant's conduct constituted two
separate and distinct offenses.  Not merely two phases of a single assault.  None of
these conditions were met here. . . .  And what the United States was discussing with
the defense prior to going on the record is, we don't have any Tenth Circuit case law
on point, and to be frank, Your Honor, the United States -- I don't see any harm at
this point in sending the jury back with the unanimity instruction.

Apr. 9 Tr. at 125:3-126:11 (Pennington).

brandishing a firearm on his lap during a verbal confrontation with Garcia.  See Motion ¶ 6, at 2.

Perea contends that the disjunctive elements for 18 U.S.C. § 111 in the jury instructions and the

verdict "misled the jury in the present case into believing that it could convict the defendant of

intimidating the officer by some means other than assault."  Motion ¶ 11, at 4.  Perea argues that

instructing that the jury could find forcible assault or forcible intimidation was a misstatement of

law, and further argues that the Court erred in not defining "forcible intimidation" in the jury

instructions.  Motion ¶ 14, at 5.  Perea argues that "intimidate" should have been defined as

"illegally discouraging, restraining or silencing through use of such force or threatened use of force."

Motion ¶ 15, at 5 (quoting Merriam-Webster Online Dictionary (2010)).  Perea contends that

brandishing a firearm to restrain another motorist from escalating a verbal argument into a physical

confrontation could not be construed as "forcibly intimidating" because it does not constitute illegal

restraint.  Motion ¶ 16, at 5.

      In response, the United States argues that the Court should deny the motion for a new trial.

See United States' Response to the Defendant's Motion for New Trial at 1, filed May 10, 2010

(Doc. 85).  The United States notes that Perea's argument that 18 U.S.C. § 111 requires an assault

was previously argued before trial, and at trial, and argues that the Court properly instructed the jury

that they had to find that Perea forcibly assaulted or forcibly intimidated Garcia.  See Response at 3.

The United States argues that Perea's approach in the motion for new trial of arguing that the Court

erred in instructing the jury in the disjunctive is another way of re-raising the issue whether § 111

requires an assault -- an issue the Court has already considered and rejected.  See Response at 3.

The United States also argues that Perea omits from his motion that he was afforded an opportunity

to tender a special verdict form to the jury that asked under which theory or theories it found guilt,

and that Perea declined the opportunity.  See Response at 4.  The United States further argues that

an assertion that the jury instructions contain an alleged error -- not instructing on a definition of "forcible intimidation" -- is not the argument that rule 33 of the Federal Rules of Criminal Procedure was designed to cover.  Response at 5.  The United States contends that, unlike assault, which is a legal term of art, Perea provides no explanation for why it would be necessary for the Court to define the term "intimidate."  Response at 5.  The United States also argues that there was more than sufficient evidence from which a reasonable jury could conclude that Perea forcibly intimidated Garcia.  See Response at 6.  The United States notes that Perea did not argue that the evidence was insufficient to support a finding of forcible assault.  See Response at 6.

In his reply, Perea argues that the United States is "urging the court that the jury in the present case convicted defendant of a 'simple assault' misdemeanor by forceful intimidation, citing [United States v.] Williams for authority."  Reply to Response to Motion for New Trial ¶ 5, at 2, filed May 12, 2010 (Doc. 86).  Perea also argues that § 111 is ambiguous and must be construed in favor of the defendant, and thus the Court should follow the United States Court of Appeals for the Ninth Circuit's holding in United States v. Chapman, 528 F.3d 1215 (9th Cir. 2008).  See Reply ¶¶ 8-9, at 2-3.  Perea also contends that the Court substantively changed the Indictment to read in the disjunctive and not the conjunctive when it used "or" instead of "and" in the elements instruction of § 111.  Reply ¶ 7, at 3.  Perea argues: "In the present case, defendant was put on notice to defend both the assault and intimidation theories of prosecution, but defendant did not know that the jury could find intimidation without also finding [assault]."  Reply ¶ 12, at 5.  Perea further argues that "forcibly intimidate" is a term of art and should have been defined as such.  Reply ¶ 14, at 5-6.

### 3.       **Arguments at the Hearing.**

The Court held a hearing on May 13, 2010.  Mr. Aarons characterized the motion for new

trial as raising two issues: (i) whether 18 U.S.C. § 111 requires assault; and (ii) whether changing the word "and" to the word "or" in the Indictment constitutes a constructive amendment. See Transcript of Hearing at 3:1-4:16 (taken May 13, 2010)("May 13 Tr.")(Aarons).  Mr. Aarons clarified that he is not arguing that it was improper for the Court to use "or" in the jury instructions, but rather that, as a matter of law, the Court should follow the Ninth Circuit's approach to § 111 in United States v. Chapman, which held that all § 111 convictions require an assault.  See May 13 Tr. at 5:15-6:3 (Court, Aarons).  Mr. Aarons also conceded that the Court, in its Memorandum Opinion and Order addressing Mr. Winterbottom's objections to the jury instructions, addressed and did not follow the Ninth Circuit's interpretation of § 111, which requires an underlying assault, but stated that he did not want to waive the issue.  See May 13 Tr. at 7:20-8:6 (Court, Aarons).  Mr. Aarons also argued that he does not believe that "forcibly intimidate" is something that can be commonly understood and that the term should have been defined in the jury instructions.  See May 13 Tr. at 10:2-4 (Aarons).  Mr. Aarons contended that forcible was defined in forcible assault, but not for forcible intimidation, and stated that he would have duplicated the language -- "includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm whether or not the threat or attempt is actually carried out or the victim is injured" -- used to define the "forcible" part of "forcible assault" in a definition of forcible intimidation.  May 13 Tr. at 13:6-14:1 (Aarons, Court).  The Court inquired what the definition of "intimidate" should be and Mr. Aarons responded that the Court could look to case law to see what others have defined it as. See May 13 Tr. at 14:2-10 (Aarons, Court).   When asked how Mr. Aarons would define "intimidate," he responded:

> MR. AARONS: I think there has to be a substantial probability of destructive or violent force.  I think the fact that we didn't at least carry that sentence over -- you know, I find myself doing the same mistake that Mr. Winterbottom did, is that it's

slightly different that I think <u>Chapman</u>'s right and we've got a lot of case law that helps us define it. I just don't think that it's a commonly understood term. And because it's not a commonly understood term, we have to grapple with it. And I think it has to do with forcing another person to do something that they otherwise might not have done.

May 13 Tr. at 15:18-16:4 (Aarons).

In response, Mr. Burkhead argued that the Tenth Circuit's holding in <u>United States v. Austin</u>, 933 F.2d 833 (10th Cir. 1991), establishes that the Indictment may be pled in the conjunctive and the case prosecuted in the disjunctive, which is what the United States did in this case. <u>See</u> May 13 Tr. at 17:21-18:10 (Burkhead). Mr. Burkhead argued that some of Mr. Aaron's argument could have been avoided had Perea agreed to a special verdict form, because the parties and the Court would know under what theory the jury found Perea guilty. <u>See</u> May 13 Tr. at 19:10-24 (Burkhead). With regards to Mr. Aarons' argument that the Court should have followed the Ninth Circuit's approach in <u>United States v. Chapman</u>, Mr. Burkhead argued that the argument is a recycling of what was heard at trial, and Mr. Burkhead contended that the split in the Courts of Appeals is over § 111(a) and not § 111(b), for which Perea was found guilty, and thus the Court does not now have to, nor did it have to at trial, reach the issue. <u>See</u> May 13 Tr. at 21:6-19 (Burkhead). Mr. Burkhead also argued that his recollection is that there was debate over an instruction on "forcibly" and not on "forcible intimidation." May 13 Tr. at 24:2-8 (Burkhead). Mr. Burkhead argued that the United States agrees with the Court that "intimidate" is commonly understood and that the jury would know it if it saw it, drawing an analogy to the Supreme Court declaring that it knew pornography when it saw it. <u>See</u> May 13 Tr. at 26:2-8 (Burkhead).

## <u>LAW REGARDING MOTIONS FOR A NEW TRIAL</u>

Rule 33 of the Federal Rules of Criminal Procedure authorizes a court to grant new trials in the interest of justice. <u>See</u> <u>United States v. Higgins</u>, 282 F.3d 1261, 1278 (10th Cir. 2002).

Rule 33 provides:

>    (a) **Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

>    (b) **Time to File.**

>        (1) **Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

>        (2) **Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33 (bolded in original).[3]  "A motion for a new trial is not regarded with favor and is only [granted] with great caution."   United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007).

## LAW REGARDING CHALLENGES TO JURY INSTRUCTIONS

Rule 30 of the Federal Rules of Criminal Procedure provides: "Any party may request in writing that the court instruct the jury on the law as specified in the request."  Fed. R. Crim. P. 30(a). Rule 30(d) requires:

>    A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection. . . .  Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b) [regarding plain error].

Fed. R. Crim. P. 30(d).  See United States v. Waupekenay, No. 93-2135, 1994 U.S. App. LEXIS 2457, at *11 (10th Cir. Feb. 7, 1994)("Fed. R. Crim. P. 30 bars a party from assigning as error any

---

    [3] Rule 33 was amended in March 26, 2009, effective as of December 1, 2009, to extend the time period for filing a motion for new trial from seven days to fourteen days.  Perea's motion for new trial was timely filed under both the new and old versions of rule 33.

portion of the jury instructions, or any omission from the instructions, unless the party timely objects and states distinctly the matter to which the party objects and the grounds for the objection."). The Tenth Circuit has held that a generalized objection to an instruction is insufficient to preserve a specific objection on appeal.  See United States v. Bornfield, 184 F.3d 1144, 1146 n.2 (10th Cir. 1999).  A request for an instruction should set forth the language in which it is desired that the jury be instructed.  See Cohen v. United States, 366 F.2d 363, 368 (9th Cir. 1966), cert. denied, 385 U.S. 1035 (1967); Tarvestad v. United States, 418 F.2d 1043, 1048 (8th Cir. 1969)("Without a further specific request of definition, the court's instruction in the language of the statute (§ 77b) is sufficient.").  "An objection to an instruction should be sufficiently specific to call to the trial court's attention th[e] precise nature of the alleged error."  Nabob Oil Co. v. United States, 190 F.2d 478, 480 (10th Cir. 1951), cert. denied, 342 U.S. 876 (1951).  "Litigants are entitled to an instruction on their theory of the case if they submit sufficient evidence in support of that theory."  Arnold v. Curtis, 2009 U.S. App. LEXIS 28718, at *11 (10th Cir. Dec. 31, 2009)(citing Murphy Oil USA, Inc. v. Wood, 438 F.3d 1008, 1019-20 (10th Cir. 2006)).  See United States v. Pinson, 542 F.3d 822, 831 (10th Cir. 2008)("A defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law, and if he has offered sufficient evidence for the jury to find in his favor.  We review a district judge's refusal to issue a requested instruction under this standard for abuse of discretion."), cert. denied, 129 S. Ct. 1369 (2009).

The Tenth Circuit has stated that it "only order[s] a new trial if an error in the instructions resulted in a miscarriage of justice."  Pers. Dep't, Inc. v. Prof'l Staff Leasing Corp., 297 Fed. Appx. 773, 784 (10th Cir. 2008)(citing Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir. 1984)).  When jury instructions are challenged, the Tenth Circuit reviews "whether, as a whole, the [trial] court's jury instructions correctly stated the governing law and

provided the jury with an ample understanding of the issues and applicable standards." Martinez v. Caterpillar, Inc., 572 F.3d 1129, 1132 (10th Cir. 2009).  The Tenth Circuit reviews the district court's decision whether to give a particular instruction for an abuse of discretion, and "reverse[s] only in those cases where [the Tenth Circuit has] a substantial doubt whether the jury was fairly guided in its deliberations."  572 F.3d at 1132 (quotation marks and citation omitted). "As long as the charge [to the jury] as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." Zokari v. Gates, 561 F.3d 1076, 1090 (10th Cir. 2009).

"Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it."  United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009). See United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008)(stating that the Tenth Circuit "typically find[s] waiver in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below"), cert. denied, 129 S. Ct. 2034 (2009).  The Tenth Circuit has clarified that "a party that has forfeited a right by failing to make a proper objection may obtain relief for plain error; but a party that has waived a right is not entitled to appellate relief."  United States v. Carrasco-Salazar, 494 F.3d 1270, 1272 (10th Cir. 2007).  In other words, "waiver is accomplished by intent, but forfeiture comes about through neglect." United States v. Zubia-Torres, 550 F.3d at 1205.  In Gunnell v. Utah Valley State College, 152 F.3d 1253 (10th Cir. 1998), the Tenth Circuit held that, although no objection was raised when the court asked if there were any objections to the jury instructions, where a party objected to the jury instructions at the final pretrial conference and reiterated concern at the jury instruction conference, the Tenth Circuit "believe[d] a fair reading of the colloquy between court and counsel indicates that both believed her objections were on the

-13-

record."  152 F.3d at 1262 n.5.

## ANALYSIS

Perea argues that the Court should grant his rule 33 motion for a new trial because: (i) the elements instruction for 18 U.S.C. § 111 instructed the jury that it could find Perea guilty of forcibly intimidating or forcibly assaulting the officer, and thus find him guilty without an underlying assault; and (ii) the jury was not instructed as to the meaning of "forcibly intimidated."  Because the Court has already addressed and rejected Perea's argument that § 111 requires assaultive conduct, the Court will not grant Perea a new trial on that basis.  Because the Court believes that forcible intimidation is generally understood and because neither Mr. Winterbottom nor Mr. Aarons could articulate an instruction on forcible intimidation which should have been in the instructions which did not require the jury to also find assault, the Court believes a new trial is not required.  The Court will therefore deny the motion for a new trial.

## I.   THE COURT HAS PREVIOUSLY ADDRESSED AND REJECTED THE ARGUMENT THAT § 111 REQUIRES ASSAULT.

Perea argues that, because the Indictment stated "forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with . . ."  and the jury instruction stated: "The Indictment accuses Mr. Perea of committing the following acts: forcibly assaulting or forcibly intimidating Mr. Sonny Garcia," the Indictment was constructively amended.  Indictment, filed April 22, 2009 (Doc. 2); Court's Final Set of Jury Instructions at 13, filed April 9, 2010 (Doc. 69); Reply ¶ 7, at 3.

> A constructive amendment of an indictment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

United States v. Gauvin, 173 F.3d 798, 805 (10th Cir. 1999)(quoting United States v. Hornung,

848 F.2d 1040, 1046 (10th Cir. 1988)).   The Tenth Circuit has held that "[i]t is permissible

for an indictment to use the word 'and' although the statute employs the word 'or.'"

United States v. Powell, 226 F.3d 1181, 1192 n.4 (10th Cir. 2000)(citing United States v. Daily,

921 F.2d 994, 1001 (10th Cir. 1991)).   The Tenth Circuit has also stated that it is "hornbook law that

a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive,

and thereafter proven in the disjunctive."   United States v. Gunter, 546 F.2d 861, 868-69

(10th Cir. 1976).   In United States v. Pauldino, 443 F.2d 1108 (10th Cir. 1971), the Tenth Circuit

stated:

> We do not believe that the government's proof of some but perhaps not all of the
> prohibited modes of violating the statute constitutes a fatal defect in appellants'
> conviction. It is settled that where a crime denounced disjunctively in the statute is
> charged in the conjunctive, proof of any one of the allegation will sustain a
> conviction.

443 F.2d at 1112.   Moreover, the Tenth Circuit has directly addressed whether it is permissible for

the Indictment to state the elements of § 111 in the conjunctive but prove them at trial in the

disjunctive.   In United States v. Austin, the defendant was tried for violating § 111, and the

indictment charged in the conjunctive, alleging that he had done all of the unlawful actions specified

in the statute.   See 933 F.2d at 843.   During deliberations, the jury sent the trial judge a note asking:

"Instruction # 2 . . . states an 'and' statement.   However, instruction # 7 states an 'or' statement.

Which is correct? Under section 111(a)(1) -- law or indictment?"   933 F.2d at 843.   In response, the

trial judge instructed the jury: "You should determine the case on the basis of instruction 7," which

stated in the disjunctive the means by which the offense could be committed.   Id. at 843.   On appeal,

the Tenth Circuit held that the "law is clear that such submission to the jury was proper, no fatal

variance being involved."   Id.   The Court, therefore, finds that Perea's argument in his reply brief

that the United States made a constructive amendment to the indictment, and thus a new trial is

warranted, unavailing.  If the rule were otherwise than the Tenth Circuit has stated in United States v. Gunter, it would be difficult for the trial court to be confident that the grand jury found probable cause that the defendant committed each act.

At the hearing, Mr. Aarons clarified that he is not arguing that it was improper for the Court to use "or" in the jury instructions, but rather that his position is that, as a matter of law, the Court should follow the Ninth Circuit's approach to § 111 in United States v. Chapman.  See May 13 Tr. at 5:15-6:3 (Court, Aarons).  In United States v. Chapman, the Ninth Circuit held that convictions under § 111 require at least some form of assault.  See 528 F.3d at 1222.  Mr. Winterbottom raised this same argument before and during trial, both in his written objections to the jury instructions and during oral argument before the Court.  During trial, the Court found that § 111 does not require an underlying assault, and therefore submitted an instruction to the jury that they could find forcible assault or forcible intimidation.  The Court also addressed Mr. Winterbottom's objections to the Court's rejection of the Ninth Circuit's approach in its April 23, 2010 Memorandum Opinion and Order.  See Memorandum Opinion and Order at 19-29, filed April 23, 2010 (Doc. 81).  The Court has reviewed Perea's renewed argument that § 111 requires assault and does not believe that he has raised anything new that the Court did not fully address in its previous Memorandum Opinion and Order.  As the Court stated in its April 23, 2010 Memorandum Opinion and Order: "Congress has not removed the other enumerated acts in § 111, and the Tenth Circuit has given no indication that a jury should not consider whether a defendant forcibly resisted, opposed, impeded, intimidated, or interfered with  a federal officer."  Memorandum Opinion and Order at 29.  Because the Court has rejected the argument that § 111 requires assault when a defendant forcibly intimidates a federal officer, the Court did not err in instructing the jury that it could find Perea forcibly intimidated Garcia, and therefore the Court will reject Perea's argument that the failure to require an underlying

assault is grounds for a new trial.

## II.   FORCIBLY INTIMIDATED IS COMMONLY UNDERSTOOD, AND NO PARTY OFFERED AN INSTRUCTION OTHERWISE.

Perea argues that the Court should have instructed the jury on a definition of "forcibly intimidate," because it "defies any common everyday definition," and "is a term of art and should have been defined as such."   Reply ¶ 14, at 6.   At trial, before finalizing the jury instructions, Mr. Winterbottom expressed that he would like an instruction on forcible intimidation.   The Court gave the parties a recess for them to craft an instruction, if any, on forcible intimidation.   When the parties returned, they indicated that they had not come to an agreement on language that should be in the instruction on forcible intimidation.   Mr Winterbottom explained his position:

> We have intimidation by assault.  If we had clear-cut case of intimidation -- that is somebody calling up a federal agent on the phone, for example, and saying, well, if you go and testify tomorrow I'm -- you're going to meet bad consequences -- that's intimidation.   That's a different kind of assault.   Officer Garcia's testimony is essentially that he was assaulted.  And we're trying to fit a square peg into a round hole.  We're trying to fit the forcibly assaulted instruction into a forcibly intimidate, when, in fact, what we've got is an assault, which is by definition, intimidating, which is, of course, bring me back to my initial objection to putting intimidation in at all, that I think all we have is an assault, because all assaults are intimidating but not all intimidations are assault.   And so -- my objection sort of brings out the problem that we're having of crafting a second instruction that speaks directly to the intimidation in this case because it is fundamentally an assault.

Apr. 9 Tr. at 139:11-140:4 (Winterbottom).   The attorneys, still disputing whether § 111 requires an underlying assault, did not put forth an instruction on forcible intimidation.   The United States argued that the Tenth Circuit Pattern Jury Instruction did not put forth such an instruction because the term is commonly understood.   The Tenth Circuit Pattern Jury Instructions provide an instruction that contemplates all six of the enumerated acts in § 111:  "*First*: the defendant forcibly [assaulted][resisted][opposed][impeded][intimidated] or [interfered with][the person described in the indictment]."   Tenth Cir. Crim. Pattern Jury Instr. 2.09, at 86 (Sept. 2005).   The pattern

-17-

instructions also provide a definition of "forcible assault."  Tenth Cir. Crim. Pattern Jury Instr. 2.09, at 86.[4]   The pattern instruction does not provide a definition of "forcibly intimidated" or "intimidate."  Tenth Cir. Crim. Pattern Jury Instr. 2.09, at 86.[5]

The Tenth Circuit defines intimidation for other crimes, such as witness tampering.  In the pattern instruction for witness tampering, 18 U.S.C. § 1512(b)(1), the Tenth Circuit instructs: "The term 'intimidation' means the use of any words or actions intended or designed to make another person timid or fearful or make that person refrain from doing something that person would otherwise do, or do something that person would otherwise not do."  Tenth Cir. Crim. Pattern Jury Instr. 2.65, at 217.  The Tenth Circuit also gives an instruction for intimidation in its bank robbery instruction:

> To take "by means of intimidation" is to say or do something in such a way that a person of ordinary sensibilities would be fearful of bodily harm.  It is not necessary to prove that the alleged victim was actually frightened, and neither is it necessary to show that the behavior of the defendant was so violent that it was likely to cause terror, panic, or hysteria.  However, a taking would not be by "means of intimidation" if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant.  The essence of

_____

[4] The instruction provides:

The term 'forcible assault' means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm, whether or not the threat or attempt is actually carried out or the victim is injured.

Tenth Cir. Crim. Pattern Jury Instr. 2.09, at 86.

[5] The Fifth, Eighth, Ninth, and Eleventh Circuits all provide a pattern jury instruction for § 111 and none of them define intimidate or forcibly intimidate.  See Fifth Cir. Dist. Judges Assoc. Pattern Jury Instr. (Criminal Cases) 2.09, at 77; Eighth Cir. Model Crim. Jury Instr. 6.18.111, at 135 (2009); Ninth Cir. Model Crim. Jury Instr. 8.2 (2008); Eleventh Cir. Pattern Jury Instr. (Criminal Cases) 1.2, at 90 (2003).

-18-

> the offense is the taking of money or property accompanied by intentional, intimidating behavior on the part of the defendant.

Tenth Cir. Crim. Pattern Jury Instr. 2.65, at 217.  Neither the United States nor Perea's attorney argued that the Court should look to either of these instructions when the Court asked the parties to propose language for "forcible intimidation" at trial, nor did Mr. Aarons offer such instruction when the Court asked him to craft an instruction at the hearing on the motion for a new trial.  The Court, however, in looking to these instructions, does not believe that they go beyond the generally understood meaning of intimidation such that the jury would not have understood what "forcibly intimidated" meant in the instruction.

Even now, a month after the trial concluded, Perea's new counsel is only able to argue that an instruction on forcible intimidation should have been provided, and yet he could not clearly articulate for the Court what such an instruction should say, just as Mr. Winterbottom was unable to articulate how he wanted the jury instructed.  When asked how Mr. Aarons would define intimidate, he responded:

> MR. AARONS: I think there has to be a substantial probability of destructive or violent force.  I think the fact that we didn't at least carry that sentence over -- you know, I find myself doing the same mistake that Mr. Winterbottom did, is that it's slightly different that I think Chapman's right and we've got a lot of case law that helps us define it.  I just don't think that it's a commonly understood term.  And because it's not a commonly understood term, we have to grapple with it.  And I think it has to do with forcing another person to do something that they otherwise might not have done.

May 13 Tr. at 15:18-16:4 (Aarons).  Mr. Aarons' articulation -- forcing another person to do something that they otherwise might not have done -- is a generally understood meaning of intimidation.  It is not, as he contends, a term of art with which the jury is unfamiliar.  The statutory language of 18 U.S.C. § 111 does not define intimidate, nor does any of the case law for § 111 articulate a definition of intimidate or forcibly intimidate.  It is the Court's duty to inform the jury

of the governing law, and the Court does not believe that the instructions, as given, misled the jury.
See Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1564 (10th Cir. 1993)(stating that the Tenth
Circuit "consider[s] all that the jury heard and, from [the] standpoint of the jury, decide not whether
the charge was faultless in every particular but whether the jury was misled in any way and whether
it had [an] understanding of the issues and its duty to determine those issues")(quotations omitted);
United States v. Holly, 488 F.3d 1298, 1302 (10th Cir. 2007)(stating that the Tenth Circuit
"review[s] a district court's decision to give [or decline to give] a particular jury instruction for an
abuse of discretion and consider the instructions [as given] as a whole de novo to determine whether
they accurately informed the jury of the governing law.").   See also Cohen v. United States,
366 F.2d at 368 (finding that a request for an instruction should set forth the language in which it
is desired that the jury be instructed); Tarvestad v. United States, 418 F.2d at 1048 ("Without a
further specific request of definition, the court's instruction in the language of the statute (§ 77b) is
sufficient.").   Because no party ever offered a proposed instruction on forcibly intimidated, nor has
a clear instruction yet been proposed, and because the Court's instruction set forth the governing law
on § 111 as the Court previously found the Tenth Circuit has interpreted it, and as the Tenth Circuit
conveys it in its Pattern Jury Instructions, the Court finds that Perea has not demonstrated that the
interest of justice necessitates a new trial.  The Court, therefore, will deny the motion for a new trial.

**IT IS ORDERED** that the Motion for New Trial is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Jack E. Burkhead
Shana B. Pennington
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Stephen D. Aarons
Santa Fe, New Mexico

      *Attorney for the Defendant*